Raul O. REYNA, Sr., Raul O. Reyna Insurance Agency, Inc. d/b/a Reyna Insurance Agency, and Patricia Reyes d/b/a Reyna Insurance Agency, Appellants,

v.

SAFEWAY MANAGING GENERAL AGENCY FOR STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY, Juan Antonio Alvarado, Rodolfo Ledesma, Rebecca Ledesma, and Nelson E. Norman, Appellees.

No. 04–97–00857–CV.

Court of Appeals of Texas, San Antonio.

March 31, 2000.

W. Wendell Hall, Lori C. Ferguson, Renee Forinash McElhaney, Fulbright & Jaworski, L.L.P., Melvin A. Krenek, Melvin A. Krenek & Associates, Phil Watkins, Suzette Skolka Kinder, Phil Watkins, P.C., San Antonio, for appellants.

John Milano, Jr., Law Office of John Milano, Jr., Dallas, Robert L. Grover, Lisa LeDoux Bruce, Grover & Bruce, P.C., Houston, for appellees.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: PHIL HARDBERGER, Chief Justice.

This appeal arises from a judgment rendered against Raul O. Reyna, Sr., Reyna Insurance Agency, Inc. d/b/a Reyna Insurance Agency and Patricia Reyna Reyes d/b/a Reyna Insurance Agency (the "Reynas"). The Reynas raise seven issues in their brief, contending: (1) the judgment must be reversed based on the Texas Supreme Court's decision in *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996); (2) the trial court impermissibly added to the damages awarded by the jury to the Ledesmas; (3) the trial court impermissibly awarded damages to Safeway; (4)

the trial court incorrectly disallowed viable claims and excluded vital evidence; (5) the evidence is insufficient to support an award of mental anguish damages; (6) the Reynas did not violate the DTPA or Insurance Code; (7) there is no evidence that Raul O. Reyna, Sr. should be liable for the judgment; and (8) the trial court failed to comply with Rule 13 in awarding sanctions. We sustain the Reynas' issues with regard to the award of breach of contract damages to the Ledesmas, the settlement credit, and the sanctions. We reverse the trial court's judgment awarding the Ledesmas breach of contract damages and the order granting the Rule 13 sanctions, and we render judgment in favor of the Reynas with regard to those claims. We modify the trial court's judgment to allow the settlement credit. As modified, the remainder of the trial court's judgment is affirmed.

### FACTUAL AND PROCEDURAL HISTORY

Juan Antonio Alvarado ("Alvarado") was insured under a policy issued to his brother-in-law, Richard Miera, by Reyna Insurance Agency on behalf of Safeway Managing General Agency for State and County Mutual Fire Insurance Company ("Safeway"). In June of 1992, Alvarado was involved in an automobile collision. Alvarado retained the services of Nelson Norman ("Norman") to represent him in a potential DWI offense arising out of the accident.[1] Alvarado also contacted Safeway, which sent Miera a questionnaire. Miera gave the questionnaire to Alvarado to handle, and, with Norman's assistance, Alvarado completed the questionnaire and mailed it to Safeway.

In May of 1994, Rodolfo Ledesma and Rebecca Ledesma (the "Ledesmas") sued Alvarado and Miera for injuries resulting from the accident. In June of 1994, Miera was served with citation. Miera gave the papers to Alvarado to handle. Alvarado took the papers to Norman, who forward-

---

1. The DWI offense was subsequently dismissed.

ed them to the Reyna Insurance Agency. Patricia Reyes testified that she instructed her office worker to fax the documents to Safeway. In June of 1994, the Ledesmas' attorney, Phil Watkins, wrote a letter to Safeway, stating that Miera had not answered and that the Ledesmas intended to take a default judgment. Safeway immediately hired Ken Richey, who filed an answer on Miera's behalf. In addition, Safeway forwarded another questionnaire to Miera who gave the questionnaire to Alvarado. Alvarado testified that he completed the questionnaire and returned it. Alvarado subsequently called Richey's paralegal to ensure that Safeway received the questionnaire, and the paralegal told him that she would contact him if there was any problem.

Alvarado was served with citation in July of 1994. Alvarado took the papers to Norman, who forwarded them by certified mail to the Reyna Insurance Agency. The certified mail receipt documents that the letter was signed for by C. Reyna, who was identified as Patricia's mother, Carmen Reyna. Patricia testified that her mother contacted her, and Patricia instructed her to fax the documents to Safeway. Patricia testified that her mother sent the documents and followed up with Maxine at Safeway, who told her that the documents were received. Maxine testified that she did not remember receiving the papers. Patricia testified that Safeway had lost other papers that had been sent to Safeway, and that she had spoken to Kay Manry regarding other lost documentation. Kay Manry testified that she would tell agents that she could not verify a document had been received until it was posted because of the huge volumes of mail received daily, which required sorting and routing before it could be posted. Kay testified that she had seen faxes mislaid and taken to the wrong person. Maxine testified that if the suit papers had been received, a note would be made in the claims folder. There was no note in Safeway's claims folder to indicate that Alvarado's suit papers were received.

On October 3, 1994, the Ledesmas took a default judgment against Alvarado. The cause of action was unliquidated, but the court found on good and sufficient evidence that Rodolfo incurred damages of $250,000 and Rebecca incurred damages of $100,000. The default judgment also awards prejudgment and postjudgment interest on those damages.

Alvarado was served with the default judgment, and he took it to Norman. Norman checked his files and discovered the certified mail receipt to the Reyna Insurance Agency. Norman contacted the Reyna Insurance Agency, informed the receptionist of the problem, but no one returned his call. Norman subsequently forwarded a letter to the Reyna Insurance Agency dated October 19, 1994, enclosing a copy of the certified mail receipt, and requesting that the Reyna Insurance Agency bring the situation to the attention of the most appropriate representative of Safeway. Norman testified that he was also in contact with Richey regarding the default judgment.

On October 12, 1994, Phil Watkins wrote Norman, enclosing a copy of the default judgment. The letter details that Safeway informed Watkins that they had only the statutory minimum limits available. In April of 1994, Watkins stated that he made a demand for the policy limits to settle the claim, but Watkins was required to file the suit when Safeway failed to respond. Watkins informed Norman that if the default judgment was set aside, he anticipated that Safeway might not settle or would only offer to pay the policy limits of $40,000. Watkins stated that he believed that amount was clearly inadequate, and his clients would not release Alvarado for that amount. Watkins concluded that the only hope his clients had of being fully compensated would be to collect on the default judgment. For this reason, Watkins stated his clients would consider a Covenant Not to Execute the judgment in exchange

for an assignment of Alvarado's claims against Safeway and its agents.

Norman testified that he met with Alvarado and that their intentions were to get the default judgment set aside. Norman testified that the covenant not to execute was only perceived as a fall-back position if the default judgment was not set aside. Both Norman and Richey filed a motion for new trial on Alvarado's behalf. Richey included in his motion for new trial an argument that the default judgment must be set aside under Rule 21 because Miera did not receive notice of the default judgment hearing and motion to sever. The Ledesmas had moved to sever the action against Miera in the event the default judgment was granted, and the two actions had been severed upon the entry of the default judgment.

At the first hearing on the motion for new trial, Richey argued that Alvarado was entitled to a new trial because Miera did not have notice of the hearing. The Ledesmas' attorney, Phil Watkins, initially argued that Miera could not show he was harmed by the entry of the default judgment but would agree to setting aside the severance order. Watkins then argued that he had not researched the issue regarding notice to Miera, but if the court felt he was entitled to the new trial, he would be agreeable to setting aside the default if the case could be tried the following week. Finally, the parties went off the record to attempt to work out an agreement. The parties then came back on the record and announced an agreement to set aside the default judgment.

Despite the agreement, the Ledesmas subsequently filed a motion to reconsider. In the interim, Norman continued to work on his motion for new trial. Norman testified that he could not get any additional information from the Reyna Insurance Agency or Safeway to assist in establishing that Alvarado was entitled to a new trial because the default was the result of an accident or mistake. Because the Reynas and Safeway were not forthcoming with the information, and Safeway took the position that it had not received notice of the suit against Alvarado, Alvarado lost confidence in Richey, Safeway and the Reynas and wanted Norman to represent him.

On December 7, 1994, the Ledesmas' motion to reconsider was presented to the trial court at a hearing. Norman testified that Alvarado had no objection to setting aside the default judgment, but if there was the possibility that it would not be set aside, Alvarado did not want Richey to represent him based on what he perceived to be a conflict of interest. Richey moved to withdraw based on the perceived conflict. The motion to withdraw was granted, and the hearing on the motion for new trial was reset. The trial court stated that if an agreement was made with regard to setting aside the default judgment, the agreement was withdrawn.

At the subsequent hearing on the motion for new trial, Norman urged that Alvarado was without fault in not filing an answer. Norman testified regarding the forwarding of the documents to the Reyna Insurance Agency and submitted Alvarado's affidavit regarding his actions. Watkins cross-examined Norman, who was forced to admit that he had no knowledge of what actions were taken by the Reyna Insurance Agency or Safeway regarding the suit papers. Because Alvarado was unable to establish accident or mistake in the handling the suit papers by the Reyna Insurance Agency and Safeway, his motion for new trial was denied.

Norman testified that he did not pursue the argument regarding the Rule 21 notice because he believed the issue was made moot by the nonsuit of Miera. Alvarado testified that a constable had come to his house on several occasions to inquire about possible assets that could be used to collect the default judgment. Alvarado was concerned that he could possibly lose his license, which he needed for his job. He stated that he was concerned that the Ledesmas could force him into bankruptcy or

garnish his wages. He further testified that he had three children for which he paid child support, and the inability to continue to pay that support could result in him being put in jail.

On December 20, 1994, Watkins wrote Norman, expressing the Ledesmas interest in obtaining an assignment from Alvarado in exchange for an agreement to delay collection efforts. On January 2, 1995, Norman responded to Watkins's letter, stating that Alvarado was interested in making an assignment in exchange for a covenant not to execute. Alvarado signed the covenant in October of 1995, but the Ledesmas did not sign until October of 1997.

About the same time that Safeway instructed Richey to file an answer for Alvarado and seek a new trial, Safeway also filed a declaratory judgment action to determine what duty they owed Alvarado. Alvarado filed a counterclaim, and the Ledesmas intervened as judgment creditors. Safeway later added claims against Norman, the Ledesmas and the Reynas. Alvarado and the Ledesmas also added claims against the Reynas. The Reynas filed counterclaims, and Norman sued the Reynas, alleging their suit against him was groundless.

Safeway, the Ledesmas, and Alvarado settled their claims against each other for $75,000 prior to trial. The parties were then realigned, with Alvarado as plaintiff, the Ledesmas as intervenors, Safeway as a third-party plaintiff, and the Reynas as defendants.

Before trial, the trial court granted Norman's special exceptions to the Reynas' counterclaim, dismissing their claim against Norman and awarding Norman $2,500 in Rule 13 sanctions. The trial court also granted other special exceptions which dismissed the Reynas' negligence counterclaims, but the trial court permitted the Reynas to assert contributory negligence as an affirmative defense. The trial court stated that Safeway's negligence was not an issue under the indemnity provision of the Producer Agreement, which required the Reynas to forward the suit papers to Safeway.

During trial, the trial court excluded evidence that Alvarado colluded with the Ledesmas to "set up" the Reynas; however, the trial court allowed questioning regarding additional actions Alvarado should have taken to set aside the default judgment. At the charge conference, Safeway, Alvarado, and the Ledesmas dropped their negligence claims against the Reynas, leaving only the claims of breach of contract, breach of fiduciary duty, and violations of the DTPA and Insurance Code.

Fifteen questions were submitted to the jury. The trial court entered its final judgment based on the jury's verdict and the trial court's independent findings.

The trial court found a contract existed between Safeway and the Reynas (the "Producer Agreement"), which required the Reynas to immediately forward to Safeway any legal citation, petition or other notice of claim received from an insured. The jury found that the Reynas failed to forward the citation and petition served on Alvarado. The trial court also found that the Producer Agreement contained an indemnity provision that required the Reynas to indemnify Safeway in the event it failed to forward the citation and petition, regardless of Safeway's own negligence. The jury found that Patricia Reyes Reyna d/b/a Reyna Insurance Agency breached her fiduciary relationship with Safeway, which breach proximately caused the damages complained of by Safeway. The trial court ordered that Safeway was entitled to recover $75,000 against the Reynas, plus attorney's fees in the amount of $8,600.

The jury also found that the Reynas knowingly engaged in each of the following that was a producing cause of damages to Alvarado: (1) false, misleading or deceptive acts or practices; (2) failure to comply with a warranty; (3) unconscionable action or course of action. The jury also found

that the Reyna Defendants knowingly engaged in unfair or deceptive acts or practices in the business of insurance that resulted in damages to Alvarado. The jury found that the amount of damages that would reasonably compensate Alvarado for his damages caused by Raul O. Reyna Insurance Agency, Inc. d/b/a Reyna Insurance Agency were $10,000 for mental anguish and $20,000 for the default judgment. The jury found that the amount of damages that would reasonably compensate Alvarado for his damages caused by Patricia Reyna Reyes d/b/a Reyna Insurance Agency were $15,000 for mental anguish and $45,000 for the default judgment. The jury found that because the conduct was committed knowingly additional damages of $50,000 should be awarded against Raul O. Reyna Insurance Agency, Inc. d/b/a Reyna Insurance Agency and $50,000 against Patricia Reyna Reyes d/b/a Reyna Insurance Agency.

Based on these findings, the trial court found the Insurance Code afforded Alvarado the greatest recovery and awarded Alvarado $93,078.14 ($25,000 in actual damages, prejudgment interest, additional damages in the amount of $50,000, and $10,700 in attorney's fees). In addition to the Ledesmas right to recover for the Reynas breach of contract, the trial court also found that the Insurance Code afforded the Ledesmas the greatest recovery on their other claims. The trial court awarded the Ledesmas $841,478.39 ($65,000 in actual damages, additional damages of $130,000, prejudgment interest, $618,694.38 for breach of contract damages, and $8,600 in attorney's fees). Finally, the trial court ordered that the Reynas take nothing on their claims against Safeway, Alvarado, and the Ledesmas. The Reynas timely appealed the trial court's judgment.

### STATE FARM FIRE & CAS. CO. V. GANDY

■ In their first issue, the Reynas argue that the trial court's judgment violates public policy, citing State Farm Fire &

Cas. Co. v. Gandy, 925 S.W.2d 696 (Tex. 1996). The Reynas contend that the underlying default judgment is not the product of a fully adversarial trial and is no evidence of injury to Alvarado. The Reynas assert that the default judgment was voidable, but Alvarado elected not to set it aside by appeal or bill of review or by seeking to enforce the Ledesmas' Rule 11 agreement. Alvarado, Safeway and the Ledesmas contend that Gandy is distinguishable and does not apply to default judgments. They also counter that the Reynas' issue raises an impermissible collateral attack on the default judgment.

■ We reject the argument that our consideration of the public policy issue raised in Gandy is a collateral attack on the default judgment. Gandy permits us to look at the public policy implications of the underlying judgment in this type of situation.

In Gandy, Julie Gandy sued her stepfather, Ted Pearce, for sexually abusing her as a child. 925 S.W.2d at 697. State Farm Fire and Casualty Company, which at one time had issued Pearce a homeowner's policy, agreed to pay an attorney chosen by Pearce to defend him but reserved the right to deny coverage. Id. State Farm contacted E. Ray Andrews, the attorney representing Pearce in the criminal action initiated by Gandy, and was advised that Andrews represented Pearce in Gandy's suit and would file an answer on Pearce's behalf, which he did. Id. at 698. In February of 1991 (a month after Gandy filed suit), State Farm sent Pearce and Andrews a letter containing a reservation of rights based on State Farm's questions regarding whether the alleged acts were covered. Id. at 698–99. After Pearce received the letter, he called State Farm's agent, who asked for an appointment to take his statement. Id. at 699. When the agent met Pearce to take his statement in March of 1991, Pearce denied all of Gandy's allegations. Id. at 699. Pearce called the agent in June, and subsequently received a letter stating that

State Farm had made a decision to defend Pearce under a reservation of the rights. *Id.* In July of 1991, a new adjuster was assigned to the file, and the adjuster wrote Andrews and told him to forward his fee invoices to the adjuster's attention for payment. *Id.* at 699–700. The adjuster asked to be advised on the progress of the lawsuit. *Id.* at 700. Andrews considered the letter "junk mail," and he never requested payment of his fees from State Farm. *Id.*

In August of 1991, Pearce retained new counsel, Howard Pattison. *Id.* Meanwhile, Gandy had moved for sanctions against Pearce for failure to comply with discovery. *Id.* On August 2, the trial court conducted a hearing, at which no one appeared for Pearce, and signed an order requiring Pearce to respond to discovery and to pay $300 in sanctions by August 31. *Id.* The order warned that failure to comply could subject Pearce to further sanctions, including striking his pleadings and rendering default judgment against him. *Id.* Pearce did not comply, and a second hearing was held on September 30. *Id.* Pattison was formally substituted, and the hearing was continued to November to hear evidence on the severity of sanctions to be imposed. *Id.* Outside the courtroom, Gandy's attorney offered to settle with Pearce if Pearce would assign his claims against State Farm and agree to a judgment. *Id.* Although Pattison advised Pearce that his pleadings would not likely be struck, and Pearce continued to deny the allegations, Pearce accepted the settlement offer because he was "fed up" with the lawsuit. *Id.* In December, Pearce signed an assignment of claims against State Farm, and Gandy signed a covenant to limit execution. *Id.* at 700–701. The assignment and covenant refer to an agreed judgment dated January 16, 1992. *Id.* at 701.

In January of 1992, State Farm's adjuster called Andrews to inquire about the status of the lawsuit. *Id.* The adjuster was told that Pattison had been substituted. *Id.* Pattison told the adjuster that he

had not had time to review the file and would call back. *Id.* Pattison did not call back, and the agreed judgment was signed on January 16, 1992. *Id.* The recitals in the judgment are incorrect in that: (1) no one appeared before the court when the judgment was signed; and (2) no evidence was received concerning the calculation of actual damages. *Id.* at 703. State Farm learned of the judgment in February of 1992. *Id.* State Farm called Pattison and asked that he move to set aside the judgment, but Pattison refused. *Id.* Gandy subsequently sued State Farm as Pearce's assignee. *Id.*

The trial court permitted Gandy to proceed on the claim that State Farm mishandled Pearce's defense. *Id.* at 704. The trial court concluded that State Farm had voluntarily undertaken to defend Pearce (even though it was not obligated to do so) and, therefore, should have done so properly. *Id.* Gandy relied on Pearce's testimony that he did not want Andrews to represent him but thought Andrews was State Farm's choice. *Id.* Pearce testified that he repeatedly called State Farm to complain about Andrews to no avail. *Id.* Prior to trial, while Andrews was still a named defendant, Andrews testified in his deposition that he was qualified to represent Pearce in Gandy's suit. *Id.* During trial, after Gandy nonsuited her claims against Andrews, Andrews testified that he was not qualified to represent Pearce. *Id.* Gandy's expert witness testified that Andrews' representation was negligent, causing an excessive judgment to be rendered against Pearce. *Id.* The jury found that State Farm was negligent (but not grossly negligent) and that State Farm violated the DTPA (but not knowingly). *Id.* The jury awarded Gandy $200,000 damages, plus attorney's fees, and the court of appeals affirmed. *Id.*

On appeal to the Texas Supreme Court, State Farm argued that Pearce's assignment to Gandy should not be given effect. *Id.* at 705. The Court explored the history of the law of alienability of choses and four

instances in which an assignment of a chose in action had been held invalid under Texas law. *Id.* at 705–711. With regard to these four instances, the Court noted that in widely different contexts, it had invalidated assignments of choses in action that tend to increase and distort litigation. *Id.* at 711.

The Court then noted two concerns with regard to the Gandy assignment. *Id.* First, the Court noted that Pearce's settlement with Gandy did not end the litigation, nor could there have been any reasonable contemplation that it would. *Id.* at 711–12. The Court asserted the likelihood of a negotiated end with a $6 million judgment was virtually nil. *Id.* at 712. Had the coverage issue been resolved early on in Gandy's litigation, Gandy would not have proposed the settlement. *Id.* The entire purpose of the arrangement was to prolong the litigation and find a way to recover against State Farm. *Id.*

Second, Pearce's settlement with Gandy greatly distorted the litigation. *Id.* In arguing for the agreed judgment, Gandy's attorney calculated that she had suffered $6 million in damages. *Id.* In the action against State Farm, Gandy's position was that with competent counsel, Pearce could have shown that she was damaged much less. *Id.* Pearce also changed positions from denying any abuse, to agreeing to $6 million in liability, to denying any abuse in the action against State Farm to show Andrews was ineffective in defending him. *Id.*

Balancing various considerations, the Court held that a defendant's assignment of his claims against his insurer to a plaintiff is invalid if: (1) it is made prior to an adjudication of plaintiff's claims against the defendant in a fully adversarial trial; (2) defendant's insurer has tendered a defense; and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim. *Id.* at 714. The Court further held that a judgment for plaintiff against a defendant rendered without a fully adversarial trial is not binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee. *Id.*

The instant case is distinguishable from *Gandy* for several reasons. First, there is no evidence that the recital in the default judgment that states that good and sufficient evidence was presented to the trial court on the issue of unliquidated damages is untrue. *Compare Gandy,* 925 S.W.2d at 703 (noting no one appeared at agreed judgment hearing and no evidence concerning the calculation of actual damages was received). Second, the default judgment was introduced as evidence against the Reynas, not Alvarado's insurer. Most importantly, however, one of the elements of the rule for holding such assignments invalid is absent because Alvarado's insurer, Safeway, failed to tender a defense, which is the reason the default judgment was entered. *See* Howell, *So Long "Sweetheart"—State Farm Fire & Casualty Co. v. Gandy Swings the Pendulum Further to the Right as the Latest in a Line of Setbacks for Texas Plaintiffs,* 29 St. Mary's L.J. 47, 81–85 (1997) (reasoning that *Gandy* factors not met in default judgment setting). The assignment in this case was not made until after a default judgment had been entered and the trial court denied a motion for new trial. The motion for new trial was denied because the Reynas and Safeway refused to come forward with evidence that the failure to file an answer was the result of an accident or mistake. They were too busy blaming each other.

In *Gandy,* the Court concluded, "[w]ithout the assignment and covenant not to execute, the agreed judgment would never have been rendered." *Id.* In this case, the default judgment was rendered before the assignment and covenant not to execute, and the default judgment was rendered because (as the jury found) the Reynas failed to send Alvarado's lawsuit and peti-

tion to Safeway. Given these distinctions, including Safeway's failure to tender a defense, we hold that the trial court's judgment is not void under the rule announced in *Gandy*.[2]

This is not a case in which Alvarado took a position contrary to his natural interests for no other reason than to gain a judgment against Safeway. Alvarado's foremost position was to have the default judgment set aside. This position was apparent in his testimony and the testimony of his attorney and is documented in the transcripts of the motion for new trial hearings. The trial court denied Alvarado's efforts to gain a new trial. While the Reynas wish to level criticism at Norman's efforts to set the default judgment aside, the fact remains that the effort was made, and Norman provided reasons for not pursuing the notice issue and the Rule 11 argument. Norman stated that the notice issue regarding Miera was moot by the nonsuit, and the trial court ruled on the Rule 11 argument at the prior hearing. When the trial court denied the motion for new trial, Alvarado's natural interest was to prevent the default judgment from being executed against him by the constable who continued to visit his door. Under these circumstances, the rule invalidating assignment announced in *Gandy* does not apply.

### Ledesmas' Contractual Damages

■ In their second issue, the Reynas contend that the trial court impermissibly awarded the current value of the default judgment as contractual damages. The Reynas assert that the award resulted in an impermissible double recovery of damages and substituted the trial court's judgment for that of the jury. The Reynas also assert that there was no evidence of the current value of the default judgment. Alvarado and the Ledesmas counter that: (1) the double recovery argument was not preserved, (2) recovery was permissible under both the tort and contract theories, (3) the court was entitled to find contract damages as a matter of law, and (4) there was expert testimony regarding the current value of the default judgment.

The jury was asked to determine the Reynas' contract and tort liability in questions 1–5, all of which the jury answered affirmatively. The jury was then instructed that if it answered yes to any of the liability questions, to determine the amount of damages that would fairly and reasonably compensate Alvarado for his damages. The jury was instructed not to include in its answer any amount that Alvarado could have avoided by exercising reasonable care. Question 7 asked about damages caused by Raul O. Reyna Insurance Agency, Inc. d/b/a Reyna Insurance Agency, and Question 8 asked about damages caused by Patricia Reyes Reyna d/b/a Reyna Insurance Agency. The jury was asked about two categories of damages: (1) mental anguish; and (2) the judgment, which was defined as the $350,000 default judgment. The jury awarded a total of $25,000 for mental anguish and, despite the closing argument by Ledesmas' counsel that the jury should award the current value of the default judgment as damages for the judgment, the jury only awarded a total of $65,000 for the judgment.

■ At the hearing on the Ledesmas' motion to enter judgment, the Ledesmas argued that the trial court could find that the Ledesmas were entitled to recover the current value of the default judgment ($618,694.83) as a matter of law under the controlling indemnity provision. The Le-

---

**2.** The Court's dicta regarding whether an insurer is bound by the amount of the underlying judgment in *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819 (Tex.1997), is also distinguishable from this case. In *Trinity*, the defendant elected not to appear and defend the plaintiff's action against him. *Id.* at 821.

In this case, the Reynas' failure to send Alvarado's lawsuit and petition to Safeway resulted in a no-answer default judgment against Alvarado, who would have elected to appear and defend the action as demonstrated by his subsequent motion for new trial. In addition, the Reynas are not Alvarado's insurer.

desmas make this same argument in their brief. The Ledesmas argument ignores, however, that the jury, as the trier of fact, found that Alvarado was only damaged in the amount of $65,000 by the judgment. In reaching this finding, the jury was taking into consideration all of the evidence presented to it, including the covenant not to execute which would preclude the Ledesmas from collecting the judgment. Under these unique circumstances, where the insurer's failure to defend due to an agency's failure to forward suit papers results in a default judgment, and the insured seeks protection from the execution of that judgment by entering into a covenant not to execute, the amount of damages caused to the insured by the default judgment is a question of fact and cannot be determined as a matter of law, and the default judgment is admissible as evidence of the damages caused by the agency. *Cf. William M. Mercer, Inc. v. Woods,* 717 S.W.2d 391, 399 (Tex.App.—Texarkana 1986) (default judgment is some evidence of actual damages but amount of actual damage is question of fact), *aff'd. in part and rev'd in part on other grounds,* 769 S.W.2d 515 (Tex.1988).

■ Since the jury answered the question regarding the amount of damages caused by the Reynas' breach of their contractual obligation, the next issue is whether we can reform the judgment to properly reflect the damages awarded by the jury.[3] Under the facts in this case, the one satisfaction rule precludes any award for contractual damages. The one satisfaction rule prevents a plaintiff from obtaining more than one recovery for the same injury. *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991). In this case, the jury found that the Reynas' contractual breach and tortious acts resulted in damages to Alvarado based on the default judgment. However, the entry of the default judgment against Alvarado was a single injury to him. He was not injured in a distinct manner based on the nature of the act that caused the entry of the default judgment. Alvarado, therefore, cannot recover twice for the judgment, once under breach of contract and once under tort claims. Because the damages awarded based on the Ledesmas' tort claims are greater than those the Ledesmas could recover based on the jury's damage finding for breach of contract, we reverse the trial court's judgment awarding damages for breach of contract and render judgment that the Ledesmas take nothing on the breach of contract claim.

### SAFEWAY'S CONTRACT DAMAGES

■ In their third issue, the Reynas assert that the trial court erred in awarding Safeway $75,000 for its breach of contract claim. The Reynas argue that the $75,000 paid by Safeway to settle the claims by Alvarado and the Ledesmas was void as a Mary Carter agreement. The Reynas further contend that the damage issue was not submitted to the jury and that they were entitled to a settlement credit for the amount Safeway paid. Safeway contends the argument with regard to the Mary Carter agreement was not preserved, or, if it was preserved, that the settlement was not a Mary Carter agreement. Safeway further counters that the damage issue was not required to be submitted to the jury, and because the injury to Safeway was independent of the injury to Alvarado and the Ledesmas, the Reynas are not entitled to a settlement credit.

■ "A Mary Carter agreement is any settlement arrangement between the plaintiff and some of the defendants in a case by which the settling defendants agree to pay the plaintiff a certain amount of money and to participate in the trial against the nonsettling defendants, and the plaintiff agrees to release the settling defendants from liability and, if the judgment

---

**3.** We note that the double recovery issue was preserved by the Reynas at the hearing on the motion to enter judgment.

against a nonsettling defendant is large enough, to repay the settlement amount." *Gandy*, 925 S.W.2d at 709. There is no evidence in this record that Alvarado and the Ledesmas agreed to repay Safeway the $75,000 if the judgment they were awarded against the Reynas was large enough. The manner in which Safeway sought to be "repaid" the settlement amount was by pursuing its independent claim against the Reynas.

■ Safeway's independent claim against the Reynas was for indemnification under the Producer Agreement. A claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual as opposed to the conclusory allegations in the plaintiff's petition and the instrument in writing. *Abcon Paving, Inc. v. Crissup*, 820 S.W.2d 951, 953 (Tex.App.—Fort Worth 1991, no writ). Under the terms of the Producer Agreement, which was admitted into evidence, the Reynas agreed to indemnify Safeway against any liability, including cost of defense and settlement, imposed on Safeway as a result of a default judgment caused by the Reynas' failure to forward suit papers to Safeway, regardless of Safeway's negligence. Once the jury found that the Reynas failed to forward the suit papers to Safeway, Safeway's right to indemnification was established for any liability it incurred regardless of its own negligence. The settlement agreement between Safeway, Alvarado and the Ledesmas was admitted into evidence, reflecting that $75,000 was paid as consideration for the settlement. The evidence was undisputed that Safeway paid $75,000 to settle the claims against it by Alvarado and the Ledesmas. As a result, $75,000 in liability was imposed on Safeway as a result of the Reynas' actions for which Safeway was entitled to indemnification. The trial court properly awarded Safeway $75,000 in damages as a matter of law. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982) (no jury question required where evidence

conclusively establishes absence of agreement).

■ Any party seeking the benefit of a settlement credit has the burden of establishing that it is entitled to such a reduction in the amount of the judgment. *See First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78–79 (Tex.1993). Safeway contends that the Reynas are not entitled to a settlement credit because the claims it paid Alvarado and the Ledesmas to settle were for breach of the insuring agreement and the claims the Reynas were held responsible for were breach of the Producer Agreement and DTPA and Insurance Code violations. However, the determination of whether a credit should be allowed is based on the nature of the injury, not the nature of the claim that caused that injury. If the injury is indivisible and was caused by both the settling and the nonsettling defendants, the nonsettling defendant is entitled to a settlement credit. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex.1991). In this case, Alvarado suffered two injuries: the default judgment and mental anguish. The default judgment was an indivisible injury caused by Safeway's failure to defend and the Reynas' failure to forward the suit papers. "There can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule." *Id.* The Reynas are entitled to a settlement credit for the $75,000 paid by Safeway.

### EXCLUSION OF EVIDENCE AND CLAIMS

In their fourth issue, the Reynas complain that the trial court incorrectly disallowed viable claims and excluded vital evidence which caused the jury to reach an improper verdict. The Reynas contend that: (1) their negligence claims and claims for the Rule 11 agreement violation should not have been stricken, (2) the indemnity provision in the Producer Agreement violates the express negligence rule, and (3) their conduct was not the produc-

ing cause of damages under the DTPA or Insurance Code.

■ The Reynas pled their negligence claim on June 13, 1997. The Reynas' negligence claim was grounded on their assertion that Alvarado breached his duty of ordinary care when he fired Richey and failed to compel specific performance of the Rule 11 agreement. Before trial, Alvarado specially excepted to the Reynas' pleading, arguing their negligence claim was barred by limitations. The trial court granted the special exception. On appeal, the Reynas maintain their cause of action did not accrue until May 27, 1997, the date the Ledesmas signed the assignment, which was only a month before the Reynas pled negligence. In contrast, Alvarado argues the negligence cause of action accrued in November of 1994, when Alvarado fired Richey.

We agree with Alvarado that the Reynas' negligence claim accrued in November of 1994. The Reynas had two years in which to bring the cause of action, or until November of 1996; however, the Reynas did not assert the claim until June of 1997. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 540 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (noting two years limitation period applies to cause of action for negligence). Because the negligence claim arose out of the same transaction or occurrence as Alvarado's claims, section 16.069 of the Texas Civil Practice and Remedies Code would have permitted the Reynas to assert the negligence claim (even though it would be barred by limitations) if the Reynas had filed a counterclaim within 30 days after the date its answer was required. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.069 (Vernon 1997). Because the Reynas failed to file their counterclaim within that time, the trial court properly granted the special exception as to the negligence counterclaim.

■ The Reynas maintain the indemnity clause in the Producer Agreement is void because it violates the express negligence rule. The Reynas contend that the trial court's failure to find the indemnity clause void resulted in several additional erroneous rulings, including the striking of claims and the exclusion of evidence. The Reynas argue that the indemnity provision was not set apart from the rest of the agreement by its type, size or style and, therefore, is not conspicuous. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex.1993). In order to preserve this issue, the Reynas were required to present the fair notice issue to the trial court for a ruling. *See id.* at 510. Because the Reynas failed to present the fair notice issue to the trial court, error was not preserved.

■ The Reynas further contend that the trial court erred in striking their claim against Alvarado and the Ledesmas for failing to abide by the Rule 11 agreement pursuant to which the Ledesmas agreed to set aside the default judgment. The special exception as to this claim was granted by two separate trial judges during preliminary proceedings when it was asserted by Safeway. The trial judge in the underlying case also granted the special exception when the Reynas belatedly sought to assert the claim in their final pleading.

At the first motion for new trial hearing, the Ledesmas agreed to set aside the default judgment in open court on the record, thereby creating a Rule 11 agreement. *Kosowska v. Khan*, 929 S.W.2d 505, 507 (Tex.App.—San Antonio 1996, writ denied). A breach of that agreement would thereafter give rise to an action for breach of contract and would be governed by general contractual law and principles. *See Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex.1995); *National Cas. Co. v. Lane Exp., Inc.*, 998 S.W.2d 256, 262 (Tex. App.—Dallas 1999, writ denied).

■ The Reynas are not parties to the Rule 11 agreement, but the Reynas contend they had standing to enforce it as third-party beneficiaries. Under general contractual principles, a third party is only

entitled to enforce a contract if the third party can show that he is either a donee or creditor beneficiary of the contract and not one who is benefitted only incidentally by its performance. *See MCI Telecommunications Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999). The Reynas contend that they are creditor beneficiaries because the Rule 11 agreement satisfied the Alvarado's duty to cooperate in the defense of the Ledesmas' claim.

■■■ A person is a creditor beneficiary if the performance under the contract will come to him in satisfaction of a legal duty owed to him by the promisee. *See id.* This legal duty may be an indebtedness, contractual obligation or other legally enforceable commitment owed to the third party. *See id.* In this context, a creditor beneficiary may be defined as a third person to whom the bargain-seeking party (the "promisee" or contract party exacting the particular stipulation) has an indebtedness, contractual obligation, or other legally enforceable commitment to the third party, which commitment the bargain-seeker wishes to discharge or protect by stipulating that the bargain-giver (the opposing contract party or "promisor" concerning the particular stipulation) shall deliver a contract performance to the third party. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 11 (Tex.App.—Dallas 1988, writ denied).

■■ The very essence of the position as so-called "creditor beneficiary" requires not only that the bargain-seeking party intend to confer a benefit upon the third party; he must further intend that the third party have the right to enforce the agreement. *See id.* at 16. Unless both intents were exhibited on his behalf, the third party remains no more than an incidental beneficiary. *See id.*

■■ In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling. *See MCI Telecommunications Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d at 651. A court will not create a third-party beneficiary contract by implication. *See id.* The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied. *See id.* Consequently, a presumption exists that parties contracted for themselves unless it "clearly appears" that they intended a third party to benefit from the contract. *See id.* If there is any reasonable doubt as to an intent to confer a direct benefit, the third-party beneficiary claim must fail. *MJR Corp.,* 760 S.W.2d at 10. Therefore, third-party beneficiary recovery will generally be denied, unless: (1) the obligation of the bargain-giver is fully spelled out, (2) it is unmistakable that a benefit to the third party was within the contemplation of the primary contracting parties, and (3) the primary parties contemplated that the third party would be vested with the right to sue for enforcement of the contract—all presumptions being invoked against liability to the third party. *See id.* at 15.

The Reynas are not parties to the Rule 11 agreement. In fact, the Reynas were not even parties to the default judgment proceeding, and the Reynas were not mentioned during the hearing in which the Rule 11 agreement was entered. It does not "clearly appear" that Alvarado and the Ledesmas intended the Reynas to benefit from the Rule 11 agreement, and we resolve all doubt against conferring creditor beneficiary status. We conclude that, at most, the Reynas were incidental beneficiaries of the Rule 11 agreement with no right to complain of its breach.

■■■ The Reynas assert that the entry of the default judgment was not the producing cause of Alvarado's alleged injury. The Reynas argue that the producing cause of the injury was the collusive conduct of Alvarado and the Ledesmas. The jury charge properly instructed the jury that "producing cause" means an efficient, exciting or contributing cause that, in a natural sequence, produced the damages.

*See Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). The jury was also instructed that there could be more than one producing cause. As the Reynas note, producing cause is satisfied by showing that an act or omission was a substantial factor in bringing about the injury and without which no harm could have occurred. *See Trinity Universal Ins. Co. v. Bleeker,* 966 S.W.2d 489, 491 (Tex.1998). The default judgment was entered after the Reynas failed to forward the suit papers to Safeway. This evidence was sufficient to support the submission of the issue regarding "producing cause" to the jury, and the evidence was sufficient to support the jury's finding.

### MENTAL ANGUISH

The Reynas contend the evidence is legally insufficient to support the jury's award of mental anguish damages.[4] An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs's daily routine. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). In this case, Alvarado presented evidence that after the default judgment was rendered in October of 1994, he was concerned for his credit and avoided buying anything. Alvarado further testified that the constable would periodically visit his house to inquire regarding his assets and that he was concerned that he could be forced into bankruptcy or that his wages would be garnished at any time, which would leave him without the funds necessary to pay his child support. If he was unable to pay his child support, Alvarado testified that he would go to jail. In addition, based on the time Alvarado was required to take off from work to address the default judgment problem, he was concerned that his job was in jeopardy. The Ledesmas did not agree not to execute the default judg-

ment until October of 1997, three years after it had been rendered. This evidence is legally sufficient to support the jury's award of $25,000 for mental anguish.

### DTPA AND INSURANCE CODE VIOLATIONS

The Reynas contend that Alvarado's allegations implicate contractual obligations and, therefore, their actions did not violate the DTPA or Insurance Code. In addition, the Reynas contend that the evidence was insufficient to show that the Reynas acted "knowingly."

The Ledesmas respond that the Reynas failed to challenge each of the tort theories submitted to the jury. Specifically, the Ledesmas note that the Reynas failed to challenge the jury's affirmative findings on unconscionability. In their reply brief, the Reynas appear to more globally challenge all of the DTPA and Insurance Code claims on the basis that the alleged actions by the Reynas implicated contractual obligations, not DTPA or Insurance Code violations. Assuming, without deciding, that the global argument made in the Reynas' reply brief was sufficient to preserve error, we conclude that some of the Alvarado's allegations implicated DTPA or Insurance Code violations.

Evidence was presented to the jury that the Reynas did more than merely fail to forward the suit papers. Evidence was presented that the Reynas altered documents and attempted to claim the suit papers were sent by introducing a cover sheet which was attached to a different document that was sent to Safeway. In addition, the Reynas added documents to their file after Safeway had copied it. This series of actions could have been found by the jury to have the tendency to deceive an average ordinary person. In addition, the jury could have determined that these actions took advantage of Alvarado's lack of knowledge. It was not the mere failure to

---

**4.** We construe the Reynas issue as a complaint regarding the legal sufficiency of the evidence because the Reynas request that we

reverse the award of mental anguish and *render* judgment for the Reynas.

send the documents in violation of the Reyna's contractual obligation, but the series of actions the Reynas took in an effort to conceal the failure that resulted in DTPA and Insurance Code violations. The Reynas assured Alvarado that the suit papers had been sent and, when pressed for evidence, searched through its files and altered and added documents in an effort to find a way to escape liability. This is unconscionable conduct. *See St. Paul Surplus Lines Ins. Co., Inc. v. Dal–Worth Tank Co., Inc.*, 917 S.W.2d 29, 51 (Tex. App.—Amarillo 1995) (lulling party into inaction and subsequently searching for means to escape liability is unconscionable), *rev'd on other grounds*, 974 S.W.2d 51 (Tex.1998) (noting parties raised numerous complains on appeal and Court was only addressing those as to which the court of appeals erred).

The jury charge defined "knowingly" as actual awareness of the falsity, deception, or unfairness of the conduct in question or actual awareness of the conduct constituting the failure to comply with a warranty. The jury charge further instructed that actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness. In this case, the jury could have inferred that the Reynas acted knowingly from the Reynas efforts to alter the documentation and to manufacture evidence that the suit papers were sent. In altering documents and files in an effort to escape liability, the Reynas knew what they were doing was false, deceptive or unfair.

## RAUL O. REYNA, SR.

■ The Reynas contend that the evidence is legally and factually insufficient to impose liability on Raul O. Reyna, Sr. based on a unity or blurring of identity between Raul O. Reyna, Sr., Reyna Insurance agency, Inc., and Patricia Reyes Reyna. In considering a legal sufficiency point, we consider only the evidence favorable to the decision and disregard all evidence and inferences to the contrary.

*Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex.1992). In conducting a factual sufficiency review, an appeals court must consider and weigh all of the evidence, not just that evidence which supports the judgment. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). The judgment can be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.; Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Raul O. Reyna, Sr. filed an assumed name certificate for the Culebra location to conduct business under the assumed name of "Reyna Insurance Agency" in December of 1992. Reyna, Sr. was the local recording agent on Alvarado's policy and had a Producer Agreement with Safeway at the time of the events giving rise to the lawsuit. The Reyna Insurance Agencies all used the same letterhead. A letter was introduced from Reyna, Sr. to Safeway stating that he was transferring ownership of his agencies in San Antonio to Patricia; however, that letter was dated December 20, 1995, and the Culebra location was not listed. This evidence is legally and factually sufficient to support the judgment against Raul O. Reyna, Sr., individually.

## RULE 13 SANCTIONS

■ In their final issue, the Reynas assert the trial court abused its discretion in awarding Norman sanctions under Rule 13 of the Texas Rules of Civil Procedure. Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the groundless pleading, and the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Karlock v. Schattman*, 894 S.W.2d 517, 523–24 (Tex.App.—Fort Worth 1995, orig. proceeding.). Without hearing evidence on the circumstances surrounding

the filing of the pleading and the signer's credibility and motives, a trial court has no evidence to determine that a pleading was filed in bad faith or to harass. *See id.* Because the trial court failed to conduct an evidentiary hearing, it had no evidence to determine that the Reynas filed their counterclaim in bad faith. The trial court, therefore, abused its discretion in awarding Rule 13 sanctions.

### CONCLUSION

The trial court erred in awarding the Ledesmas breach of contract damages and in awarding Norman sanctions. The trial court also erred in failing to give the Reynas a settlement credit for the $75,000 that Safeway paid Alvarado and the Ledesmas. We reverse the trial court's judgment awarding the Ledesmas breach of contract damages and the order granting the Rule 13 sanctions, and we render judgment in favor of the Reynas with regard to those claims. We modify the trial court's judgment to allow the settlement credit. As modified, the remainder of the trial court's judgment is affirmed.