TOP RANK, INC. et alia., Plaintiffs and Counterclaim Defendants,

v.

Armando GUTIERREZ, Individually and d/b/a Armando's Bar–B–Q Inn,[1] et alia., Defendants, Counterclaim Plaintiffs, and Third–Party Plaintiffs

v.

Paragon Communications, Inc. d/b/a Time Warner Cable and f/k/a Paragon Cable, Third–Party Defendant.

Nos. SA–99–CA–880–FB, SA–99–CA–881, SA–99–CA–987.

United States District Court, W.D. Texas, San Antonio Division.

June 4, 2001.

---

**1.** The Court notes the parties have used various spellings of the defendants' establishment name. All references will be to Armando's Bar–B–Q Inn, a spelling provided by defendants.

See also, 2001 WL 1018402.

Bart W. Huffman, Matthews & Brnascomb, P.C., for Top Rank, Inc., Entertainment by J & J, Inc.

Barry Mittelberg, Mittelberg & Nicosia, New York City, for Prostar, Inc.

Raul X. Villarreal, Law Office of Arthur Guzman, San Antonio, TX, Ted D. Lee, Gunn, Lee & Keeling, San Antonio, TX, for Estate of Armando, Alfredo O. Esquivel.

## ORDER

JUSTICE, Senior District Judge.

On this day, the court considered Third Party Defendant's Motion for Summary Judgment and Brief in Support (Doc. No. 86), along with numerous related pleadings, Defendant's Motion and Brief for Summary Judgment (Doc. No. 87), along with numerous related pleadings, the Report and Recommendation of the United States Magistrate Judge (Doc. No. 123), Time Warner Cable's Objections to Report and Recommendations of United States Magistrate Judge (Doc. No. 128), and Gutierrez' Response to Time Warner Cable's Objections to Report and Recommendations of United States Magistrate Judge (Doc. No. 129). After reviewing the applicable pleadings and authorities, the Report and Recommendation of the United States Magistrate Judge will be accepted in its entirety.

## STANDARD OF REVIEW

When reviewing a magistrate's report and recommendation, if no objections are raised, the report and recommendation is reviewed for "plain error or manifest injustice." *Rodriguez v. Bowen,* 857 F.2d 275, 276–7 (5th Cir.1988). If objections are raised, the district court is to make a *de novo* review of the portions of the report and recommendation to which objection is made. *See* 28 U.S.C. § 636(b)(1)(c). Upon making a *de novo* review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

## DISCUSSION

Third party defendant, Paragon Communications, Inc., doing business as Time Warner Cable ("Time Warner"), raises three objections to the Report and Recommendation. Time Warner argues that the Magistrate Judge erred in failing to grant its motion to deny the contract claim of defendant and third party plaintiff, Armando Gutierrez ("Gutierrez"). Second, Time Warner objects to the denial of its motion to deny Gutierrez's DTPA claim. Finally, Time Warner objects to the Magistrate Judge's failure to find that Gutierrez's DTPA and breach of contract claims are actually disguised indemnity claims.

The portions of the Report and Recommendation to which objections are made will be reviewed *de novo*, and the rest of the Report and Recommendation will be reviewed for plain error or manifest injustice.

### A. Defendant's Contract Claim

Time Warner argues that the evidence before the court is legally insufficient to establish a contract obligating Time Warner to designate Gutierrez's account as commercial. Time Warner characterizes the only basis for establishing such a contract as Gutierrez's subjective belief that such a contract existed. As the Magistrate Judge found, however, there is ample evidence in the record, including documentary evidence, and depositions from Time Warner's witnesses, that raises a fact issue as to whether a contract existed. Accordingly, granting summary judgment against Gutierrez would be inappropriate. Time Warner's objection is overruled.

### B. Defendant's Deceptive Trade Practices Act Claim

Time Warner's first argument is that Gutierrez's DTPA claim is identical to his breach of contract claim, and as such, is not actionable under the DTPA. Time Warner's argument is without merit. The court agrees with the Magistrate Judge's finding that the DTPA "allegation does not restate a breach of contract claim; rather defendant are asserting that AOL/Time Warner, through its actions, falsely implied its authority to provide the fights to a commercial establishment." Report and Recommendation at 39. Such an allegation does not depend on the existence of a contract.

Time Warner's second argument is that the Gutierrez's DTPA claim did not survive his death, which occurred on March 6, 2001. Gutierrez argues that Time War-ner's argument was inapplicable at the time the summary judgment was argued and decided, and that it would thus be improper to consider Time Warner's argument in the context of objections to the Report and Recommendation of the Magistrate Judge. This court agrees with Gutierrez. Accordingly, Time Warner's objection to the denial of summary judgment on Gutierrez's DTPA claim is overruled.

### C. Time Warner's Indemnity Argument

█ The last argument raised by Time Warner is that Gutierrez has simply reframed, as DTPA and breach of contract claims, his real argument that Time Warner should indemnify him, to avoid what Time Warner characterizes as the prohibition against indemnity contained in 47 U.S.C. §§ 553 and 605.

Time Warner's argument is flawed for two reasons. First, Gutierrez's claims stand on their own merit as breach of contract and DTPA claims, and as such, they are distinct from simple indemnity claims. They fit comfortably within the labels he has placed on them, and they do not bear the indicia of disguised indemnity claims. That is, the claims do not track the elements of an indemnity claim. The cases cited by Time Warner, on the other hand, deal with claims that track the elements of prohibited claims.

The second flaw in Time Warner's argument is that indemnity claims under 47 U.S.C. §§ 553 and 605, have not been affirmatively barred. *Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*, cited by Time Warner, merely stands for the proposition that Congress did not provide for indemnification under 47 U.S.C. §§ 553 and 605, and that the court would decline to create a common law right of indemnification. 151 F.3d 1129, 1131 (9th Cir.1998). It does not stand for the proposition that Congress actively

elected to disallow indemnification under the statute. In contrast, the cases cited by Time Warner in support of the proposition that Gutierrez's claims ought to be kept out all deal with claims that were affirmatively barred by the legislature. The rationale for keeping out claims that the legislature wanted to disallow in all forms simply does not apply to a type of claim to which the legislature was simply indifferent. Accordingly, Time Warner's objection in this relation is overruled.

## CONCLUSION

For the foregoing reasons, Time Warner Cable's Objections to Report and Recommendations of United States Magistrate Judge (Doc. No. 128) shall be, and are hereby, **OVERRULED**, and the Report and Recommendation of the United States Magistrate Judge is **ACCEPTED** in its entirety. Accordingly, it is

**ORDERED** that Defendant's Motion and Brief for Summary Judgment (Doc. No. 87) is **DENIED.** It is further

**ORDERED** that Third Party Defendant's Motion for Summary Judgment and Brief in Support (Doc. No. 86) is **GRANTED** in part, and **DENIED** in part as follows:

Summary judgment as to defendants' breach of implied contract claims is **DENIED.**

Summary judgment as to defendants' breach of third party beneficiary contract is **GRANTED,** and defendants' third party beneficiary claim shall be, and is hereby, **DISMISSED.**

Summary judgment as to defendants' claim that Time Warner made misrepresentations in October 1997 in violation of the DTPA is **GRANTED** and those claims shall be, and are hereby, **DISMISSED.**

Summary judgment as to defendants' claim that Time Warner falsely misrepresented its authority to provide the Chavez fight to defendants in 1998 is **DENIED.**

Summary judgment as to defendants' DTPA claim for breach of implied warranty is **GRANTED,** and defendants' breach of implied warranty claims shall be, and are hereby, **DISMISSED.**

Summary judgment as to defendants' claims that Time Warner committed unconscionable acts in violation of the DTPA shall be, and is hereby, **GRANTED,** and those claims shall be, and are hereby, DISMISSED.

Any relief expressly requested, and not herein **GRANTED,** shall be, and is hereby **DENIED.**

It is further

**ORDERED** that any claims against Joe Basquez shall be, and are hereby, **DISMISSED** from this civil action. It is further

**ORDERED** that any claims against Alfredo O. Esquivel, individually and doing business as The New Mug Club, and any claims against Conception Sierra Vazquez, individually and doing business as Pecan Grove, shall be, and are hereby, **DISMISSED,** without prejudice, for Prostar's failure to prosecute.

## *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE*

MATHY, United States Magistrate Judge.

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge [2] and consistent with the authority vested in United States Magistrate

2. Docket no. 92.

Judges under the provisions of 28 U.S.C. § 636(b)(I)(B) and rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrates, effective January 1, 1994, in the Western District of Texas, the following Report is submitted for your review and consideration.

## I. *JURISDICTION*

The Court has jurisdiction under 28 U.S.C. §§ 1331, 1367, 2201, and 2202.

## II. *PROCEDURAL HISTORY*

The procedural history of these three consolidated cases is somewhat complicated. Causes of action were filed against defendants Armando B. Gutierrez d/b/a Armando's Bar–B–Q Inn, (the "Inn") and Armando B. Gutierrez, individually ("Gutierrez" and collectively "defendants"), by three individual plaintiffs—Top Rank, Inc. ("Top Rank") on August 17, 1999;[3] Entertainment by J & J, Inc. ("J & J") on August 17, 1999;[4] and Prostar, Inc. ("Prostar") on September 8, 1999 (collectively "plaintiffs").[5] On January 11, 2000, these three cases were consolidated in cause number SA–99–CA–880–FB.[6] The

cases generally concern the allegedly unauthorized broadcasts of championship boxing matches in violation of 47 U.S.C. §§ 553 and 605.[7] J & J and Prostar allege that on September 13, 1997, defendants illegally broadcast a match between Oscar de la Hoya and Hector Camacho and Top Rank alleges that on September 18, 1998, defendants illegally broadcast the match between Oscar de la Hoya and Julio Cesar Chavez.[8] Defendants answered, generally denying the allegations.[9]

On January 20, 2000, defendants filed counterclaims against plaintiffs seeking a declaration that defendants have not violated 47 U.S.C. §§ 553 and 605.[10] On February 10, 2000, defendants filed their first amended original answer and counterclaims.[11] In addition, defendants filed their affirmative defenses based on accord and satisfaction and *laches* as well as alleging that plaintiffs' causes of action are barred by their own licenses and that defendants purchased broadcasts of the matches at issue from an authorized cable operator and had authorization to view the matches.[12] Defendants also filed a third-party claim against third-party defendant

---

**3.** Docket no. 1.

**4.** Cause No. SA–99–CA–881, docket no. 1.

**5.** Cause No. SA–99–CA–987, docket no. 1. Initially, Prostar also named Alfredo O. Esquivel, individually and d/b/a The New Mug Club and Joe Basquez, individually and d/b/a Pecan Grove as defendants. On December 16, 1999, Prostar filed a first amended complaint which omitted Joe Basquez as a party and named instead, Conception Sierra Vasquez, individually and d/b/a Pecan Grove. (Docket no. 16). Therefore, Joe Basquez should be dismissed from the case. Defendants Esquivel and Vasquez and their respective establishments are not parties to the motions for summary judgment at issue in this Report. Their continued presence in the case will be discussed below.

**6.** Docket no. 21.

**7.** Docket no. 1 in each case. The Court notes that docket no. 16, Prostar's first amended complaint and live pleading also alleges violations of §§ 553 and 605.

**8.** Docket nos. 1 in SA–99–CA–880, 881; docket no. 16 in SA–99–CA–987.

**9.** Docket nos. 2 in SA–99–CA–880, 881 and docket no. 4 in SA–99–CA–987.

**10.** Docket no. 26. The same day, the District Court denied plaintiffs' motion to dismiss the counterclaims, (docket no. 25), an argument which was included in plaintiffs' response to defendants' motion for leave to file the counterclaim (docket no. 16).

**11.** Docket no. 30.

**12.** *Id.* at 12.

Paragon Communications, Inc., d/b/a Time Warner Cable and f/k/a Paragon Cable ("AOL/Time Warner") for indemnity and contribution.[13] Plaintiffs answered defendants' counterclaims.[14]

On February 14, 2000, AOL/Time Warner filed a motion to dismiss the third-party complaint for failure to state a claim for relief and alternative motion for summary judgment.[15] Defendants, on February 18, 2000, filed a response to the motion to dismiss [16] and a motion for leave to amend the third-party complaint.[17] On March 10, 2000, AOL/Time Warner filed a motion to dismiss for lack of subject matter jurisdiction and amended motion to dismiss for failure to state a claim for relief.[18] On March 29, 2000, the District Court denied AOL/Time Warner's motion and amended motion to dismiss for failure to state a claim for relief, motion to dismiss for lack of subject matter jurisdiction, and motion for summary judgment.[19] In addition, the District Court granted defendants' motion for leave to amend,[20] and the amended third-party complaint was filed on March 29, alleging breach of contract, breach of a third-party beneficiary contract, and violation of the Texas Deceptive Trade Practices Act ("DTPA").[21]

AOL/Time Warner filed its motion for summary judgment against defendants on September 13, 2000,[22] and defendants filed their motion for summary judgment against plaintiffs on September 14, 2000.[23] The parties have responded and replied to the motions for summary judgment.[24] The District Court referred the case to the magistrate judge for disposition of all pretrial matters on September 26, 2000.[25]

## II. *FACTUAL BACKGROUND*

The undisputed facts establish that defendant Gutierrez owns and operates the Inn located at 2019 Mission Road, San Antonio, Texas.[26] In 1981, Gutierrez subscribed for cable television services at 2019

13. *Id.* at 15. All references to third party defendants in this report are to "AOL/Time Warner" regardless of whether the company was, at the time in question, doing business under a predecessor name.

14. Docket no. 35, Top Rank, filed February 23, 2000; docket no. 36, J & J, filed February 23, 2000; and docket no. 44, filed March 21, 2000.

15. Docket no. 31.

16. Docket no. 32.

17. Docket no. 33.

18. Docket no. 37.

19. Docket no. 46.

20. *Id.*

21. Docket no. 51.

22. Docket no. 86.

23. Docket no. 87.

24. *See* docket nos. 100, 101, 102, 103, 104, 106, and 108. ·The undersigned notes that on January 9, 2001, AOL/Time Warner filed a motion to extend the time to file dispositive motions in order that it might file a supplemental motion for summary judgment. Docket no. 114. The motion was denied on January 16, 2001 (docket no. 117) and AOL/Time Warner has filed objections to and an appeal from that order (docket no. 119). The appeal is pending before the District Court. On January 23, 2001, AOL/Time Warner tendered for filing its supplemental motion for summary judgment. Because the District Court denied AOL/Time Warner's motion to extend the dispositive motions, the tendered supplemental motion for summary judgment was not cited in this report. The arguments there presented would not change the recommendations of this report.

25. Docket no. 92. On February 1, 2001, the case was referred to the undersigned. Docket no. 120.

26. Docket nos. 1 at ¶ 5; 30 at 7, ¶ 8.

Mission Road,[27] and AOL/Time Warner subsequently acquired the rights to that cable service account from its predecessor.[28] Plaintiff J & J owned the exclusive license to exhibit the September 13, 1997 boxing match between Oscar de la Hoya and Hector Camacho ("Camacho fight") at licensed commercial closed circuit television exhibition outlets in Texas.[29] Plaintiff Prostar alleges that it also owned the rights to distribute the Camacho fight.[30] Plaintiff Top Rank owned the rights to telecast the September 18, 1998 boxing match between Oscar de la Hoya and Julio Cesar Chavez ("Chavez fight").[31]

On or about September 13, 1997, defendants ordered from AOL/Time Warner and paid for the rights to view the Camacho fight and televised the fight at the Inn.[32] Shortly thereafter, a series of communications from J & J and Prostar notified defendants that J & J and Prostar owned the rights to televise the Camacho fight to licensed commercial establishments in Texas; J & J and Prostar expected payment for defendants' unauthorized broadcast; and legal action against defendants was possible.[33] In addition, the communications informed defendants that their cable service account was for residential service under Gutierrez's name rather than the Inn's and that pay-for-view programing, such as the Camacho fight, offered by cable companies could not be shown at a commercial establishment without an appropriate license, which defendants did not have.[34] On October 13, 1997, AOL/Time Warner verified for defendants that Gutierrez had been paying for a residential cable service account and not business service.[35] Records show that AOL/Time Warner intended to go to the Inn and disconnect the cable service.[36]

On or about September 18, 1998, defendants ordered from AOL/Time Warner the rights to view the Chavez fight and televised the fight at the Inn.[37] In August and September 1999, plaintiffs served defendants with their original complaints. On October 29, 1999, AOL/Time Warner again informed Gutierrez that the cable account was not for a business.[38]

## IV. ISSUES

1. Whether defendants violated 47 U.S.C. § 553.

2. Whether defendants violated 47 U.S.C. § 605.

3. Whether AOL/Time Warner breached a contract.

4. Whether AOL/Time Warner violated the Texas DTPA.

5. Whether defendants Alfredo O. Esquivel, individually and d/b/a The New Mug Club and Conception Sierra Vasquez, individually and d/b/a

---

27. Docket no. 102, exhibit D.

28. Docket nos. 51 at ¶ 9; 55 at ¶ 12.

29. Docket no. 100, exhibit C (sealed) to declaration of Marcus W. Corwin.

30. Docket no. 16 in SA–99–CA–987. Unlike J & J, Prostar did not provide evidence to support this allegation.

31. Docket no. 100, exhibit B to declaration of Marcus W. Corwin.

32. Docket no. 30 at 8, ¶ 13; docket no. 106, exhibit L.

33. Docket no. 86, exhibit 2.

34. *Id.*

35. Docket no. 102, exhibit G.

36. *Id.*

37. *Id.;* docket no. 30 at 8, ¶ 14.

38. Docket no. 102, exhibit G.

Pecan Grove should be dismissed from the case.

## IV. SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[39]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact.[40] A fact is material if it might affect the outcome of the lawsuit under the governing law.[41] A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a verdict for the non-moving party.[42] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[43]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[44] The burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[45] All evidence and inferences drawn from that evidence must be viewed in the light favorable to the party resisting the motion for summary judgment.[46] Thus, summary judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[47]

## VI. ARGUMENTS AND CONCLUSIONS OF LAW

### A. Defendants' Motion for Summary Judgment

#### 1. Overview

Plaintiffs Top Rank, J & J, and Prostar allege that defendants Gutierrez and the Inn violated the Federal Communications

---

39. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

40. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

41. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir.1994).

42. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995).

43. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

44. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

45. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

46. *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir.1993).

47. *See Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir.1991).

Act of 1934 (the "Act"), as amended, 47 U.S.C. §§ 553 and 605.[48] Specifically, plaintiffs allege that they had exclusive license agreements to broadcast the fights and preliminary bouts or the associated undercards at licensed closed-circuit commercial locations such as arenas, bars, theaters, clubs, restaurants, and lounges throughout Texas.[49] Plaintiffs allege the broadcasts were not intended for the general public.[50] Because transmissions of the fights were electronically scrambled, plaintiffs allege that in order to have the rights to the decoded broadcasts of the fights, commercial establishments had to contract with and pay a fee to plaintiffs.[51] Plaintiffs allege that defendants permitted patrons and workers to view the fights at the Inn.[52] According to plaintiff's allegations, to lawfully show the fights at the Inn, defendants had to, but did not, purchase from plaintiffs the right to transmit the fights.[53] Plaintiffs allege that defendants illegally intercepted or assisted in the unauthorized interception of the closed-circuit telecasts of the fights and divulged or published the communications to the patrons and workers of the Inn.[54]

Defendants have moved for summary judgment, arguing that they cannot be held liable under either § 553 or § 605.[55]

In particular, defendants argue that because they were authorized by AOL/Time Warner to receive the transmission of the fights, defendants cannot be liable for illegal interception of cable service under § 553.[56] Defendants also argue that because they received the fights through cable wires, they are not liable under § 605 which is intended to protect "radio communications."[57] Plaintiffs oppose summary judgment on the legal grounds advanced by defendants, as discussed below.

## 2. Section 553

■ Section 553 provides in relevant part that:

No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.[58]

A "cable operator" is:

any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through

---

**48.** Docket no. 1. Because the material allegations are the same in each case, all references are to docket no. 1 in SA–99–CA–880.

**49.** *Id.* at 2.

**50.** *Id.* at 3.

**51.** *Id.*

**52.** *Id.*

**53.** *Id.*

**54.** *Id.*

**55.** Docket no. 87.

**56.** *Id.* at 3, 8–9.

**57.** *Id.* at 2–8. Defendants have not moved for summary judgment challenging plaintiffs' rights to disseminate the fights. Therefore, the report merely notes for the record that evidence in opposition to summary judgment submitted by plaintiffs contains information on Top Rank's rights to disseminate both fights and J & J's rights to disseminate the first fight. The record does not, however, reflect what rights Prostar had to disseminate the first fight. It is not clear to the undersigned whether, if plaintiffs were to prevail on the merits, defendants would be required to pay only J & J for the first fight, or both J & J and Prostar.

**58.** 47 U.S.C. § 553(a).

any arrangement, the management and operation of such a cable system.[59] That AOL/Time Warner is a cable operator is not in dispute. Defendants argue that because they bought the fights from cable operator AOL/Time Warner, they were authorized to view the fights and have not violated § 553.[60] Defendants also argue that they were unaware that AOL/Time Warner had classified their account as residential, that such classification occurred years after defendants initially purchased service, and that AOL/Time Warner's error does not create defendants' violation of § 553.[61] Defendants further argue that they were authorized to receive the fights even though AOL/Time Warner might have breached "some agreement it may have with some other entity." [62] Other than citing the statute, defendants cite no authority for their interpretation of § 553.

Plaintiffs argue that merely purchasing the fights from a cable operator does not exonerate defendants from a violation of § 553 because they were not authorized by AOL/Time Warner or plaintiffs to televise the fights at a commercial establishment.[63] Plaintiffs' uncontested summary judgment evidence establishes that plaintiffs had the exclusive rights to broadcast the fights.[64]

In addition, plaintiffs' uncontested evidence includes a "PPVN Affiliation Agreement" produced by AOL/Time Warner which shows that the cable operator was not authorized to sell pay-for-view programming, such as the fights televised at the Inn, to non-residential establishments.[65]

Although the record reflects that the cable account was in Gutierrez's name and connected at the Inn's address, defendants have produced no evidence that AOL/Time Warner could or did authorize Gutierrez to use the residential service to telecast the fights to patrons and employees at the Inn.[66] Alternatively, with respect to the second fight, assuming, as the defendants assert, that AOL/Time Warner should have designated defendants' account as a commercial account, defendants have produced no evidence that AOL/Time Warner could or did authorize Gutierrez to broadcast the fight to customers and employees. As to defendants' argument that they lacked knowledge about the residential nature of the cable account, an explanation which appears to be weak with respect to the broadcast of the second boxing match (after the "warning communications"), the statute does not require a knowing violation.[67] While not relevant to establishing a

---

59. *Id.* at § 522(5).

60. Docket no. 87 at 8.

61. *Id.*

62. *Id.* at 8–9.

63. Docket no. 100 at 11–12.

64. Docket no. 100, exhibits A, B, C (sealed) to declaration of Marcus W. Corwin.

65. *Id.,* exhibit A (sealed) to declaration of Bart W. Huffman at § 11(d).

66. *See Kingvision Pay Per View, Ltd. v. Williams,* 1 F.Supp.2d 1481, 1484 (S.D.Ga. 1998) (under § 605, paying for boxing match

on pay-per-view basis did not relieve bar owner from liability for unauthorized display in commercial establishment to patrons); *see also National Satellite Sports, Inc. v. Eliadis, Inc.,* 65 F.Supp.2d 662, 668–669 (N.D.Ohio 1999) (improperly listing customer as residential did not absolve cable operator from liability under § 605 for unauthorized transmission to commercial establishment).

67. 47 U.S.C. § 553(c)(C) (setting civil penalty for unknowing violation). The undersigned notes the District Court stated in its April 4, 2000 Order (docket no. 53) that:

Apparently, it is undisputed plaintiffs are entitled to some compensation for the showing of their product in a commercial establishment irrespective of defendant Gu-

violation, whether defendants knew that using a residential account to televise the fights in a commercial establishment was unauthorized appears to be relevant to the amount of damages to which plaintiffs might be entitled for a willful violation.[68] Because plaintiffs have raised a genuine issue of material fact about whether defendants were authorized to televise the fights to a commercial establishment, the Inn, for viewing by patrons and employees, defendants' motion for summary judgment as to the alleged § 553 violations should be *denied*.

### 3. Section 605

■ Defendants have moved for summary judgment, arguing that because cable transmissions rather than "radio communications" are at issue, plaintiffs cannot rely on § 605(a) for relief.[69] Defendants do not deny that the fights were televised to Inn patrons and employees or that no commercial establishment fee was paid for the right to broadcast the fights at the Inn. But, defendants argue that it is undisputed they were able to broadcast the fights because of their cable services from AOL/Time Warner. Plaintiffs argue that because cable transmissions of the fights began as radio communications, they remain radio communications despite the fact that the fights were made available to defendants by a cable operator.[70]

Section 605 provides in relevant part that:

> tierrez' purported innocent good faith in doing so. There does not appear to be any *scienter* or *mens rea* requirement in the statute.

**68.** *Id.* at (c)(B) (setting civil penalty for willful violation).

**69.** Docket no. 87 at 3.

**70.** Docket no. 100 at 6.

Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.[71]

The first sentence of § 605(a) regulating wire[72] and radio communications pertains

**71.** 47 U.S.C. § 605(a).

**72.** Wire communications are defined as:
the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) inci-

to the conduct of communication personnel[73] and is not applicable to the issues presented in this case. The remaining sentences proscribe the unlawful interception or reception of a radio communication. Radio communication is defined as:

the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.[74]

For § 605(a) to be applicable, the fight communications at issue must fall within this definition.

The Fifth Circuit has not previously addressed in a published opinion the precise issue posed by this case: is unauthorized reception and display of a cable transmission which originated as a radio communication covered by § 605(a).[75] Nevertheless, at least two circuits have addressed the question, reaching divergent results. Defendants rely on *United States v. Norris*,[76] from the Seventh Circuit and plaintiffs rely on *International Cablevision, Inc. v. Sykes*,[77] from the Second Circuit. Both *Norris* and *Sykes* considered the unlawful sale of cable television descrambler

equipment or "black boxes." Although the cases are distinguishable on that ground, their discussions of § 605(a) provide guidance as to the proper disposition of this case. In *Norris*, the Seventh Circuit held that § 605(a) regulates only the unlawful interception of transmissions from the air and § 553(a) regulates the unlawful interception of cable programming transmitted over a cable system.[78] On the other hand, in *Sykes*, the Second Circuit held that § 605(a) regulates any transmission originating as a radio communication, regardless of whether the transmission is intercepted while it is a radio wave or while being transmitted over a cable system.[79]

Although the parties do not dispute that the communications originated with satellite (radio) transmissions and that defendants received the communications by cable service, the definition of "radio communications" requires that the delivery of communications be "incidental" to the "transmission by radio." No party has produced summary judgment evidence to show whether AOL/Time Warner's delivery of the cable services to defendants on the occasions in question was "incidental" to the original radio transmission from the satellite to AOL/Time Warner.[80] Unlike both *Norris* and *Sykes*—where the

---

dental to such transmissions. 47 U.S.C. § 153(52).

73. *See Edwards v. State Farm Ins. Co.*, 833 F.2d 535, 540 (5th Cir.1987); *see also United States v. Norris*, 88 F.3d 462, 465 (7th Cir. 1996); *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131 n. 4 (2nd Cir.), *cert. denied*, 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217 (1996).

74. 47 U.S.C. § 153(33).

75. *See United States v. Harrell*, 983 F.2d 36, 38 (5th Cir.1993) (deciding that § 605(e)(4) is not vague or ambiguous and that the section proscribes piracy of cable programing signals whether for commercial or private use).

76. *Norris*, 88 F.3d at 465.

77. *Sykes*, 75 F.3d at 131 n. 4.

78. 88 F.3d at 469.

79. 75 F.3d at 132–34.

80. Although there is no suggestion that the determination of whether the cable transmission is "incidental" should take into consideration business matters such as billing, the Court notes that much of the summary judgment evidence relates to commercial versus residential customer payments. If Gutierrez is a commercial customer, AOL/Time Warner would receive approval to transmit the fights to defendants after Gutierrez directly contracted with and paid plaintiffs. If, on the other hand, Gutierrez is a residential customer, AOL/Time Warner would allow Gutierrez

records in the district court included evidence and arguments as to the physical characteristics of the cable interception in issue, forming a basis for the courts' respective legal conclusions as to the applicability of § 605(a) [81]—the parties here have not provided summary judgment evidence to show how AOL/Time Warner retransmitted the radio transmission to customers like Gutierrez.[82] The parties also do not present summary judgment evidence or argument as to whether the delivery of the two fights in question was incidental to the original radio transmission.

In sum, the undersigned does not recommend that the District Court resolve this question of law of first impression in this circuit without a factual record that explains the relevant aspects of the technology of the transmission of the cable services and provides an adequate record to support the District Court's conclusions as to whether the cable transmissions were "incidental" to the radio communications. Therefore, defendants motion for summary judgment as to plaintiffs' allegations that § 605 was violated should be *denied.*

## B. AOL/Time Warner's Motion for Summary Judgment

### 1. Summary of the Arguments

Defendants have sued AOL/Time Warner, alleging that if defendants are liable to plaintiffs, AOL/Time Warner is legally obligated to defendants for:(a) breach of a contract for services between defendants and AOL/Time Warner; (b) breach of a third-party beneficiary contract between AOL/Time Warner and plaintiffs for which cable subscribers, such as defendants, who received the boxing matches were the intended beneficiaries; and (c) violation of the DTPA by AOL/Time Warner's misleading, deceptive, and false acts.[83] AOL/Time Warner has moved for summary judgment, arguing that defendants have "failed to make a showing sufficient to establish" that AOL/Time Warner breached a contract with defendants.[84] In addition, AOL/Time Warner argues that through Gutierrez's deposition testimony, allegedly admitting no contract was breached, defendants have negated an essential element of the breach of contract claim.[85] As to the third-party beneficiary claim, AOL/Time Warner argues that because no third-party beneficiary contract exists, defendants cannot establish an essential element of defendants claim that such a contract was breached.[86] AOL/Time Warner further argues that defendants have negated an element of their DTPA claims through Gutierrez's admissions that AOL/Time Warner did not make

---

to view the fight only if Gutierrez ordered the pay-per-view program, agreeing to pay the pay-per-view premium charge. Unlike *Norris* and *Sykes,* no argument or evidence is presented that directly addresses whether AOL/Time Warner's delivery of the fight via cable services was "incidental" or not to the radio transmission from the satellite.

**81.** *See, International Cablevision, Inc. v. Noel,* 859 F.Supp. 69, 71 (W.D.N.Y.1994), *vacated sub nom by International Cablevision, Inc. v. Sykes,* 75 F.3d 123 (2nd Cir.), *cert. denied,* 519 U.S. 929, 117 S.Ct. 298, 136 L.Ed.2d 217

(1996); *United States v. Norris,* 833 F.Supp. 1392, 1393 (N.D.Ind.1993), *aff'd by* 34 F.3d 530 (7th Cir.1994).

**82.** The Court notes that plaintiffs have not sued AOL/Time Warner.

**83.** Docket no. 51 at 4.

**84.** Docket no. 86 at 10.

**85.** *Id.*

**86.** *Id.* at 11.

any misrepresentations to defendants.[87]

## 2. Breach of Contract for Services

 The elements of breach of contract in Texas are: (1) the existence of a valid contract; (2) that plaintiff performed or tendered performance; (3) that defendant breached the contract; and (4) that plaintiff was damaged as a result of the breach.[88] In order to be successful on its motion for summary judgment, therefore, AOL/Time Warner must show there is no genuine issue of material fact that it did not breach a contract with defendants.

AOL/Time Warner argues it is entitled to summary judgment because Gutierrez by admitting in his deposition testimony that no contract was breached has negated an element of the claim.[89] During his deposition, Gutierrez was asked the following:

Q. Are you claiming that Paragon breached a contract in this case?

A. I don't quite follow your answer. Can you repeat it?

Q. Are you claiming that Paragon breached a contract it had with you in this lawsuit?

Mr. Lee: Objection.. You're asking him for a legal conclusion as to whether or not there is or is not a breach of contract.

Q. Okay. You can answer it. Are you claiming in this lawsuit that Para-gon breached a contract it had with you?

A. I can't answer that question. I don't understand what you're asking me.

Q. You know what a contract is?

A. Sure.

Q. A contract, two parties make a promise?

A. I ain't never had nothing like that with Paragon Cable.[90]

Defendants argue this testimony is insufficient to establish that there is no genuine issue of material fact regarding the breach of contract claim because the testimony shows only that Gutierrez did not understand the questions asked and that he was being asked for a legal conclusion.[91] At best this testimony raises a question about whether Gutierrez understands the elements of making a contract but it does not, as AOL/Time Warner argues, establish there was no breach of contract. Therefore, the Court recommends that AOL/Time Warner's motion for summary judgment on the ground that the breach element of the breach of contract claim has been negated by Gutierrez's deposition testimony should be *denied.*

In their response to the motion for summary judgment, defendants assert their contract with AOL/Time Warner was implied-in-fact by the conduct and course of dealings between the parties.[92] Defendants allege that Gutierrez's request and

---

87. Docket no. 86 at 11–12.

88. *Southwell v. University of the Incarnate Word,* 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1998, pet. denied) (citing *Wright v. Christian & Smith,* 950 S.W.2d 411, 412 (Tex. App.-Houston [1st Dist.] 1997, no writ); *Garner v. Corpus Christi Nat'l Bank,* 944 S.W.2d 469, 476 (Tex.App.-Corpus Christi 1997, writ denied), *cert denied,* 525 U.S. 965, 119 S.Ct. 410, 142 L.Ed.2d 333 (1998); *St. Paul Ins. Co. v. Rakkar,* 838 S.W.2d 622, 629 (Tex.App.-Dallas 1992, writ denied)).

89. Docket no. 86 at 10.

90. Docket no. 86, exhibit deposition excepts at 208–209.

91. Docket no. 102 at 4.

92. *Id.* at 5.

payments for cable service and AOL/Time Warner's installation of the service at the Inn; regular administration of the account, such as assigning account numbers, billing, and monitoring account information; provision for repair services; and broadcast of pay-per-view events when ordered by Gutierrez establish an implied-in-fact contract.[93] In addition, defendants allege that distinguishing between residential and commercial accounts was a function of AOL/Time Warner's administration of accounts and that AOL/Time Warner breached the implied-in-fact contract with defendants by improperly classifying defendants' account as residential.[94] Defendants argue that summary judgment is improper as to their implied-in-fact contract claim because whether the parties mutually assented to such a contract is a question of fact that must be determined from the circumstances of the parties' relationship and because whether the implied contract was breached is a genuine issue of material fact.[95]

Although AOL/Time Warner moved for summary judgment only on the ground that defendants could not establish the breach element of their breach of contract claim,[96] AOL/Time Warner has replied to defendants' assertions that summary judgment is improper as to the implied-in-fact contract, by arguing in part that defendants presented no "evidence of a contract obligating [AOL/Time Warner] to designate him [Gutierrez] as a commercial account."[97] In particular, AOL/Time Warner argues that the breach of contract claim is based "solely on [Gutierrez's] 'understanding and expectation that [AOL/Time Warner] would handle the administration' of his account, as they had '[s]ince 1981.' "[98] According to AOL/Time Warner's argument, Gutierrez's subjective beliefs are not evidence the parties mutually assented to the "alleged 'understanding.' "[99] Additionally, AOL/Time Warner argues that "the alleged undertaking to 'handle the administration' of the account is too indefinite, as a matter of law, to create any contractual obligation."[100] The Court notes AOL/Time Warner is not arguing that the parties did not have an implied-in-fact contract, rather the argument is that no competent evidence establishes the parties mutual intent for the contract to obligate AOL/Time Warner to properly designate Gutierrez's account as a commercial account. Defendants filed a supplemental response[101] arguing that the

93. *Id.*

94. *Id.* at 6–7.

95. *Id.* at 5–6.

96. The Court notes that in its reply, AOL/Time Warner asserts that it "showed an absence of evidence to support the breach of contract claim." Docket no. 104 at 3. From the context of its arguments in the motion for summary judgment on this issue, however, AOL/Time Warner appears to be challenging only the evidence supporting the breach element rather than the evidence to establish all elements of a breach of contract claim. *See* docket no. 86 at 10.

97. Docket no. 104 at 4–5.

98. Docket no. 104 at 5.

99. *Id.*

100. *Id.*

101. The Court notes that in docket no. 106, defendants' supplemental response, defendants state that "[t]hird party defendants in their Motion for Summary Judgment and in their Reply do not specifically address breach of contract. Their pleadings only address whether there is evidence of a contract in the first place. Consequently, this issue is not before the Court." This is a mischaracterization of AOL/Time Warner's motion for summary judgment which, as stated above, moved for summary judgment on the evidence establishing the breach element of the claim.

record contains "ample objective evidence that the parties intended to be bound by a contract for the provision of cable programing whereby [AOL/Time Warner] would provide the cable programming, associated administrative services and pay-per-view events and Gutierrez would pay his monthly bills." [102] In addition, defendants argue that evidence raises a question of material fact about whether AOL/Time Warner breached the contract by misdesignating Gutierrez's account as residential rather that commercial and by selling pay-per-view events the company had no right to provide. [103] Even though AOL/Time Warner did not originally move for summary judgment on the existence of an implied-in-fact contract, in an effort to present a comprehensive report to the District Court, this report addresses the parties' arguments and evidence on this issue. [104]

The elements of a contract, whether express or implied, are identical. [105] As a rule, a party may recover under an implied contract only when no express contract exists covering the subject matter. [106] An implied contract "arises from the acts and conduct of the parties, [the contract] being implied from the facts and circumstances that there was a mutual intention to contract." [107] Whether the parties have mutually assented is a question of fact. [108] An implied contract is effective in law when one party can reasonably draw an inference of a promise from any conduct by the other party. [109] If the terms of the alleged implied contract are so indefinite that it would be impossible for a court to fix the legal liabilities and obligations of the parties, there is no enforceable contract. [110]

After reviewing excerpts from Gutierrez's deposition [111] and his affidavit, [112]

102. Docket no. 106 at 2–3.

103. *Id.* In its sur-reply, AOL/Time Warner contends defendants are alleging a breach of an implied warranty of authority to see the pay-per-view events. The Court does not construe defendants' pleadings or summary judgment allegations to assert a cause of action for breach of a warranty contained in an implied-in-fact contract.

104. Because defendants filed a supplemental response after AOL/Time Warner presented arguments in support of a summary judgment on the lack of evidence that the parties mutually assented to a contract obligating AOL/Time Warner to properly classify Gutierrez's account, non-movants, defendants, have been fully heard on this issue.

105. *See University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.-San Antonio 1989, no writ).

106. *See Threadgill v. Farmers Ins. Exchange,* 912 S.W.2d 264, 268 (Tex.App.-Dallas 1995, no writ).

107. *E–Z Mart Stores, Inc. v. Hale,* 883 S.W.2d 695, 699 (Tex.App.-Texarkana 1994, writ denied) (citing *Haws & Garrett Contractors, Inc. v. Gorbett Brothers Welding Co.,* 480 S.W.2d 607, 609 (Tex.1972)); *see Hondo Oil & Gas Co. v. Texas Crude Operator, Inc.,* 970 F.2d 1433, 1436 (5th Cir.1992) ("Texas law recognizes an implied contract in which the parties form a contract based upon their acts and conduct.").

108. *See Salazar v. Coastal Corp.,* 928 S.W.2d 162, 168 (Tex.App.-Houston [14th Dist.] 1996, no writ); *City of Houston v. First City,* 827 S.W.2d 462, 473 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

109. *Hale,* 883 S.W.2d at 699 (citing *Haws,* 480 S.W.2d at 609).

110. *See Moore v. Dilworth,* 142 Tex. 538, 179 S.W.2d 940, 942 (1944); *Ernst & Whinney,* 773 S.W.2d at 710; *Weitzman v. Steinberg,* 638 S.W.2d 171, 175 (Tex.App.-Dallas 1982, no writ).

111. Docket no. 86, attached exhibit; docket no. 102, exhibit B; docket no. 106, exhibit J.

112. Docket no. 102, exhibit C.

copies of bills,[113] AOL/Time Warner administrative records,[114] and the depositions of AOL/Time Warner personnel,[115] the Court concludes defendants have presented evidence that raises a genuine issue of material fact as to whether an implied-in-fact contract obligating proper designation of Gutierrez's account existed between AOL/Time Warner and defendants and whether it was breached. In addition, the evidence establishes definite terms of the contract. The undisputed evidence shows that Gutierrez requested cable service from AOL/Time Warner and its predecessors in 1981 and, at that time, the service was installed at the Inn. AOL/Time Warner sent bills reflecting the services received, periodic increases in the price of the services, and special pay-per-view programs, including the fights, available to subscribers. Gutierrez paid these bills on a monthly basis. Gutierrez testified that when he experienced difficulties with the cable service, he would notify AOL/Time Warner and repairs would be effected. When he wanted to view a special pay-per-view program, Gutierrez would notify AOL/Time Warner, the program would be transmitted to the cable equipment at the Inn, and the cost for the program would be included on a subsequent cable bill. If Gutierrez complained that the programming was disrupted or not received, AOL/Time Warner would make adjustments to Gutierrez's bills. Gutierrez ordered and paid for pay-per-view programming for other boxing matches prior to the two fights at issue. At least as early as 1994, AOL/Time Warner distinguished between residential and commercial accounts. Although the service was installed at the Inn, a commercial establishment, Gutierrez's account was classified as residential. When he was notified by plaintiffs in October 1997 that he had illegally shown the Camacho fight to the Inn's customers and employees, Gutierrez went to AOL/Time Warner for clarification. AOL/Time Warner's records indicate that Gutierrez was informed the account was for residential service only. Gutierrez testifies that he was told the account would be changed to a commercial account, and AOL/Time Warner's records show that the company intended to disconnect the service at the Inn. Gutierrez ordered and received the Chavez fight at the Inn in 1998. Only after Gutierrez notified AOL/Time Warner in October 1999 that plaintiffs were suing defendants for the illegal broadcasts at the Inn of the 1997 and 1998 fights, did AOL/Time Warner approach Gutierrez in December 1999 about signing a contract for commercial services at the Inn. The record also reflects that AOL/Time Warner was not authorized to transmit pay-per-view events for viewing by the customers of non-residential establishments, such as the Inn, without notification from plaintiffs.

Based on this evidence, the Court concludes that a jury could find it was reasonable for Gutierrez to believe that he had a contract with AOL/Time Warner obligating the company to install and repair cable equipment, bill for regular and special services, and properly provide access to requested special pay-per-view programming. A jury also could find it was reasonable for Gutierrez to believe that AOL/Time Warner upon notification was obligated to timely reclassify Gutierrez's account from residential to commercial service and that AOL/Time Warner breached this obligation. For these reasons, there is a genuine issue of material fact preventing the entry of summary judgment in favor of AOL/Time Warner

---

**113.** *Id.,* exhibit D; docket no. 106, exhibit L.

**114.** Docket no. 102, exhibit G.

**115.** *Id.,* exhibits E, F, and H.

on its argument that there is no "evidence of a contract obligating [AOL/Time Warner] to designate [Gutierrez] as a commercial account" and that the contract has been breached. The Court recommends that AOL/Time Warner's motion for summary judgment on this basis should be *denied.*

### 3. Breach of a Third–Party Beneficiary Contract

AOL/Time Warner has moved for summary judgment on defendants' claim for breach of a third-party beneficiary contract, arguing that because there is no such contract, defendants cannot "make a showing sufficient to establish the existence of an essential element" of the claim.[116] Defendants argue that summary judgment should be denied on this claim because they have not had the opportunity to conduct discovery, to which they are entitled pursuant to Federal Rule of Civil Procedure 56(c), of plaintiffs on this issue.[117] Defendants also argue that a document entitled "PPVN Affiliation Agreement" ("Agreement") is evidence that defendants are the third-party beneficiaries of a contract between plaintiffs and AOL/Time Warner.[118]

■ In Texas, "a third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party, and only if the contracting parties entered into the

contract directly for the third party's benefit." [119] Under Texas law,

> courts will not create a third-party beneficiary contract by implication and the obligation must be fully and clearly spelled out or enforcement will be denied. *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4 (Tex.App.-Dallas 1988, writ denied). In that case, the Court noted that a benefit to the third party must have been within the contemplation of the contracting parties.[120]

"A presumption exists that the parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit form the contract." [121]

■ To be a beneficiary under a contract, a third party must show that he is either a creditor or donee beneficiary, and not one who benefits only incidentally by fulfillment of the contract.[122] A person is a donee beneficiary when "the performance promised will, when rendered, come to him as a pure donation." [123]

A third-party creditor beneficiary contract exists:

> Where a promisee in a contract owes a debt or obligation to a third-party and contracts for a performance to be rendered to the third-party with the intention that such performance will discharge the debt owed by the promisee, the third-party is a creditor beneficiary

**116.** Docket no. 86 at 11.

**117.** Docket no. 102 at 7–8.

**118.** Docket no. 106 at 6.

**119.** *Goldberg v. R.J. Longo Construction Co.,* 54 F.3d 243, 247 (5th Cir.1995) (citations omitted); *MCI Telecommunications Corp. v. Texas Util. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999).

**120.** *Goldberg,* 54 F.3d at 247 (quoting *Foster, Henry, Henry & Thorpe, Inc. v. J.T. Construc-*

*tion Co.,* 808 S.W.2d 139, 140 (Tex.App.-El Paso 1991, writ denied)).

**121.** *MCI Telecommunications,* 995 S.W.2d at 651 (citing *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503–04 (Tex.1975)).

**122.** *MCI Telecommunications,* 995 S.W.2d at 651.

**123.** *Id.*

of the promise, entitled to enforce it in an action at law .... [124]

Generally, third-party beneficiary claims will be denied unless: (1) the promisor's (the bargain-giver) obligations are fully spelled out; (2) there is no doubt that a benefit to the third party was contemplated by the contracting parties; and (3) the contracting parties intended for the third party to have the right to sue for enforcement of the contract.[125]

■ Defendants argue that they are creditor beneficiaries of the Agreement and are entitled to enforce the contract between plaintiffs and AOL/Time Warner which has been breached by AOL/Time Warner.[126] In particular, Defendants argue that under the Agreement, the clear intent was to benefit the subscribers and AOL/Time Warner, the affiliate, had the obligation to ensure these benefits to Gutierrez, as a subscriber.[127] Defendants contend they are creditor beneficiaries because Gutierrez, "received the pay-per-view fights in satisfaction of a legal duty owed to him when in accordance with his agreement with Paragon, he ordered the fights and agreed to pay for them when billed." However, in considering whether defendants were third-party creditor beneficiaries, the Court may look only to the four corners of the Agreement to determine whether the parties intended the contract to directly benefit a third party.[128] To be able to bring a claim for breach of a third-party creditor beneficiary contract, defendants must show that plaintiffs and AOL/Time Warner entered into the Agreement for defendants' benefit and intended for defendants to benefit by the Agreement.[129]

After reviewing the arguments and the Agreement, the Court concludes for several reasons that defendants have produced no evidence of a third-party beneficiary contract. First, defendants have argued that it is AOL/Time Warner that owes defendants an obligation. However, the obligation AOL/Time Warner allegedly owes defendants did not exist before the Agreement was executed and, therefore, discharging of the obligation could not have been the purpose for the Agreement. Rather, AOL/Time Warner's obligation arose because of provisions in the Agreement that AOL/Time Warner would have the exclusive license to provide pay-per-view programing to residential subscrib-

**124.** *Talman Home Fed. Sav. & Loan Ass'n of Ill. v. American Bankers Ins.*, 924 F.2d 1347, 1353 n. 6 (5th Cir.1991) (quoting *Toyomenka, Inc. v. Toko Kaiun Kabushiki Kaisha*, 342 F.Supp. 292, 295 (S.D.Tex.1972) and citing *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 11 (Tex.App.-Dallas 1988, writ denied); *Economy Forms v. Williams Bros. Construction*, 754 S.W.2d 451, 456 (Tex. App–Houston [14th Dist.] 1988, no writ)); *see Reyna v. Safeway Managing Gen. Agency for State & County Mut. Fire Ins. Co.*, 27 S.W.3d 7, 22 (Tex.App.-San Antonio, 2000, vacated by settlement agreement) ("In this context, a creditor beneficiary may be defined as a third person to whom the bargain-seeking party [the 'promisee' or contract party exacting the particular stipulation] has an indebtedness ... which commitment the bargain-seeker wishes to discharge or protect by stipulating that the bargain-giver [the opposing contract party or 'promisor' concerning the particular stipulation] shall deliver a contract performance to the third party.").

**125.** *See Reyna*, 27 S.W.3d at 22; *MJR*, 760 S.W.2d at 14.

**126.** Docket no. 106 at 7.

**127.** Docket no. 106 at 7.

**128.** *Talman Home*, 924 F.2d at 1352; *Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 544 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

**129.** *See Talman Home*, 924 F.2d at 1351.

ers.[130] Second, because defendants have alleged that AOL/Time Warner owed them the obligation, there must be provisions in the Agreement for PPVN to discharge or protect the obligation; and there are no such provisions. Third, in the event defendants might be alleging that AOL/Time Warner is the party who, by the terms of the Agreement is to dispose of an obligation to defendants, there is no evidence that PPVN owed any debt or obligation to defendants prior to the execution of the Agreement. Finally, under a fair reading of the Agreement, only the contracting parties were intended to directly benefit from the terms, with PPVN receiving fees for licensing rights and AOL/Time Warner acquiring the rights to transmit pay-per-view programing in specified areas. Any benefits to the residential subscribers of AOL/Time Warner were merely incidental. Because there is no genuine issue of material fact that the Agreement is not a third-party beneficiary contract, the Court recommends that AOL/Time Warner's motion for summary judgment on that ground should be *granted.*

### 4. DTPA

#### a. Statute of Limitations

■ AOL/Time Warner has moved for summary judgment on defendants' DTPA claim arguing that the claim is barred by the statute of limitations.[131] Section 17.565 of the Texas Business and Commerce Code provides that DTPA claims:

> must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive practice or act.[132]

As the movant, AOL/Time Warner bears the burden of establishing as a matter of law when defendants knew or should have known of acts giving rise to a DTPA claim.[133]

According to AOL/Time Warner's argument, defendants' DTPA claim is barred by the two year statute of limitations because the evidence shows Gutierrez discovered his account was misclassified as a residential in October 1997 but did not tender the DTPA claim for filing with the District Clerk's Office until January 26, 2000.[134] Defendants presented evidence showing that when Gutierrez ordered and received the transmission of the Chavez fight in September 1998, he believed AOL/Time Warner had, as its representatives stated in October 1997 would be done, reclassified his account as a commercial account.[135] Defendants argue they could not have known until they were sued by plaintiffs on August 17, 1999, that AOL/Time Warner had misrepresented its intent to reclassify the account as a commercial account.[136] Because AOL/Time Warner did not negate defendants' evidence or respond to their argument, AOL/Time Warner has not established as a matter of law when Gutierrez discovered or should have, with reasonable diligence, discovered AOL/Time Warner's alleged misrepresen-

---

130. Docket no. 106, exhibit M at § 1.

131. Docket no. 86 at 12.

132. Tex. Bus. & Com. Code Ann. § 17.565 (Vernon 1987).

133. *See Burns v. Thomas,* 786 S.W.2d 266, 267–68 (Tex.1990).

134. Docket no. 86 at 13.

135. Docket no. 102, exhibit B at 180 and exhibit C.

136. Docket no. 102 at 14.

tation.[137] Therefore, the Court recommends that AOL/Time Warner's motion for summary judgment on the ground that the statute of limitations bars defendants' DTPA claims should be *denied.*

### b. Misrepresentation

■ AOL/Time Warner has also moved for summary judgment on the DTPA claim, arguing first that Gutierrez's deposition testimony negates an essential element of that claim.[138] Specifically, AOL/Time Warner contends that Gutierrez has denied AOL/Time Warner made any misrepresentations to defendants.[139] Defendants argue that Gutierrez's deposition testimony shows only that AOL/Time Warner did not lie to Gutierrez.[140] Defendants define lie as "an intentionally false statement" and state without citation to authority that a "misrepresentation can simply be a false representation without being a lie." [141] Defendants argue that Gutierrez was not asked whether false representations were made to him and the question asked was not in the context of the subject matter of the misrepresentation.[142] Defendants also argue that Gutierrez's answers cannot be relied upon to negate an element of the DTPA claim be-

cause it is clear from the testimony that Gutierrez believed the questioning was in reference to the December 1999 contract between defendants and AOL/Time Warner.[143]

Section 17.46(b) of the DTPA contains a list, referred to as a "laundry list," of conduct considered to be false, misleading, or deceptive acts.[144] Private consumers may bring an action for damages caused by a laundry-list violation.[145] The elements of a laundry-list DTPA claim are: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; (3) on which the consumer relied; and (4) these acts constituted a producing cause of the consumer's damages." [146] AOL/Time Warner is attempting to negate the second element. Generally, an act is misleading, deceptive, or false if the act "has the capacity to deceive an 'ignorant, unthinking, or credulous person.'" [147] In making misrepresentations actionable, the DTPA's purpose is to "ensure that descriptions of goods or services offered for sale are accurate." [148] Although a statement must be false to be actionable,[149] unless the DTPA specifies, the defendant does not have to make an intentional, knowing misrepresentation.[150]

137. *See Burns,* 786 S.W.2d at 267–68.

138. Docket no. 86 at 11.

139. *Id.*

140. Docket no. 102 at 10.

141. *Id.* (citing *Readers Digest Oxford Complete Wordfinder* 865 (Am. Ed.1996)).

142. *Id.*

143. *Id.*

144. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 385–86 (Tex.2000); *see* TEX. BUS. & COM. CODE ANN. § 17.46(b)(1)-(25) (Vernon Pamp. 2001).

145. TEX BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon Pamp.2001).

146. *Id.; Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995) (quoting *Spradling v. Williams,* 566 S.W.2d 561, 562 (Tex.1978)).

147. *Id.* at 480.

148. *Id.* (citing *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980)).

149. *Id.; Pennington,* 606 S.W.2d at 687.

150. *Smith v. Baldwin,* 611 S.W.2d 611, 616 (Tex.1980) (unlike subsections 9, 10, 13, and 17 of § 17.46 of DTPA, other subsections do not require intentional misrepresentation);

The deposition testimony in question is as follows:

Q. Okay. Are you claiming that Paragon made any misrepresentations to you? You know was a misrepresentation is?

A. Yes.

Q. Yeah.

A. I don't know if they made any misrepresentations, but I know they made a couple of mistakes.

Q. Well, misrepresentation is a lie. Did Paragon ever lie to you?

Mr. Lee: Wait. Wait. Objection. That's a misstatement of the law. A mistake can be a misrepresentation as well.

Q. Did Paragon ever lie to you?

A. No, Sir. They never lied to me.

Q. Did Paragon ever make a misrepresentation to you?

A. Well, on this new contract, that's a little-they rephrased it a little different. Mr. Chris Johnson rephrased it a little different.

Q. Okay. And how did he phrase it that you didn't agree with.

A. Well, I agreed. But he said that it was going to be at a cheaper rate. I said, I really don't care. I just want to be in right status, period.

Q. But you read it before you signed it, and it's not at a cheaper rate, is it?

A. Well, I don't mind paying for a cable system. I have done it for-I started with cable system when I was paying seven bucks.

*see In re Bairrington,* 183 B.R. 754, 759 (Bankr.W.D.Tex.1995) (citations omitted).

**151.** Docket no. 86, exhibit deposition excerpts at 209–210.

**152.** Docket no. 102 at 11.

Q. And that was 20 years ago?

A. Twenty-one years ago to give you the exact time.

Q. Did Paragon make any misrepresentations to you?

A. No, Sir. No, Sir.[151]

From this deposition testimony, it is clear that Gutierrez was provided an inaccurate definition for "misrepresentation" and that he was unsure of the time period to which the questioning referred. Therefore, the Court recommends that AOL/Time Warner's *motion for summary judgment* on this ground should be *denied.*

In their response to the motion for summary judgment, defendants assert that in October 1997, AOL/Time Warner misrepresented its intent to reclassify Gutierrez's account from residential to commercial.[152] Although AOL/Time Warner moved for summary judgment only on the ground that Gutierrez's deposition testimony negated the element requiring the defendant to have engaged in false, misleading, or deceptive acts, AOL/Time Warner has replied to defendants' allegation that statements made in October 1997, were misrepresentations in violation of the DTPA.[153] AOL/Time Warner notes that defendants cited no DTPA "laundry list" violations of § 17.46(b) in support of their misrepresentation allegations, and argues that the mere failure to perform a promise does not constitute a DTPA violation.[154] AOL/Time Warner contends that such a "claim is nothing more than an allegation that [AOL/Time Warner] breached" a contract.[155]

**153.** Docket no. 104 at 9.

**154.** *Id.* at 9.

**155.** *Id.* at 9–10.

Defendants filed a supplemental response[156] arguing that although mere claims for breach of contract will not ordinarily support a DTPA claim, a false statement of fact regarding a party's rights under an agreement does raise a valid DTPA cause of action.[157] In that regard, defendants argue that by approving Gutierrez to receive the fights, AOL/Time Warner falsely represented its authority to provide the fights to Gutierrez, violating § 17.46(5), (7), (12), and (14).[158] Defendants also alleges that AOL/Time Warner violated § 17.46(5), (7), and (12) by misrepresenting in October 1997, that Gutierrez's account classification would be corrected.[159] AOL/Time Warner has filed a surreply, reiterating its previous arguments and addressing defendants' new assertion.[160] Even though AOL/Time Warner did not originally move for summary judgment on whether the alleged October 1997 statements were misrepresentations or whether AOL/Time Warner falsely represented its authority to provide Gutierrez with the fights, in an effort to present a comprehensive report to the District Court, this report addresses the parties' arguments and evidence on this issue.[161]

### The October 1997 Statements

Viewing the evidence favorably to defendants as non-movants, which the Court must in a motion for summary judgment, in October 1997, when Gutierrez questioned how his account was classified, AOL/Time Warner representatives told Gutierrez the account was residential. When Gutierrez responded that the cable service was installed at the Inn, the representatives stated the service would be disconnected or that the account would be reclassified to a commercial account. No changes were made until December 1999, after defendants were sued for illegally broadcasting the Chavez fight in a commercial establishment. Defendants argue the representatives' statements were misrepresentations at the time they were made in violation of the DTPA. According to AOL/Time Warner's argument, defendants' allegation that the October 1997 statements were misrepresentations is merely a reassertion of defendants' claim that a contract was breached when AOL/Time Warner failed to reclassify the account.

▉ Failure to perform the terms of a contract, without more, is not a misleading, false, or deceptive act under § 17.46.[162]

---

**156.** The Court notes that in docket no. 106, defendants' supplemental response, defendants state that "[t]hird party defendants in their Motion for Summary Judgment and in their Reply do not specifically address breach of contract. Their pleadings only address whether there is evidence of a contract in the first place. Consequently, this issue is not before the Court." This is a mischaracterization of AOL/Time Warner's motion for summary judgment which, as stated above, moved for summary judgment only on the evidence establishing the breach element of the claim.

**157.** Docket no. 106 at 7.

**158.** *Id.*

**159.** Docket no. 106 at 8.

**160.** Docket no. 108.

**161.** The Court notes that defendants' response also alleges that AOL/Time Warner has breached an implied warranty of fitness in violation of § 17.50(a)(2) of the DTPA. Docket no. 102 at 11–12. For the reasons, set forth in the text, the Court will consider, in a separate section, the arguments and evidence as to this issue.

**162.** *Helms v. Southwestern Bell Tel. Co.,* 794 F.2d 188, 191 (5th Cir.1986) (claim of errors in yellow pages advertisement did not state DTPA cause of action because " 'misrepresentation' alleged by the Helmses was nothing more than Southwestern Bell's failure to perform its promise to correctly print the ad"); *Crawford v. Ace Sign, Inc.,* 917 S.W.2d 12, 14 (Tex.1996) (same); *Ashford Dev., Inc. v. US-Life Real Estate Serv.,* 661 S.W.2d 933, 935

When the "essence of the allegations is that: (1) defendants represented that they would perform under the contract, and (2) nonperformance means that they misrepresented that they would perform under the contract," the DTPA has not been violated and the proper recourse is a breach of contract cause of action.[163]

■ As in *Crawford v. Ace Sign, Inc.*, defendants are alleging that because AOL/Time Warner represented it would reclassify Gutierrez's account but did not perform, AOL/Time Warner made a misrepresentation in violation of the DTPA. In essence, defendants are attempting to recast their breach of contract claim as a DTPA cause of action.[164] Because defendants' allegation that the October 1997 statements violate the DTPA is merely a claim for breach of contract, the Court concludes that AOL/Time Warner's motion for summary judgment on this ground should be *granted*.

### False Representation of Authority

■ Defendants allege that by approving Gutierrez to receive the broadcasts of the fights, the persons handling his requests represented that AOL/Time Warner had the authority to provide the fights to Gutierrez at the Inn; a representation that was untrue at the time the fights were ordered.[165] AOL/Time Warner argues that it is entitled to summary judgment as a matter of law because this allegation "is identical to [defendants'] allegation that [AOL/Time Warner] breached its contract by selling him pay-per-view events it lacked the authority to sell." [166] Because of the facts surrounding each of the two fights, the Court concludes that the allega-

tions and arguments raised by the parties must be considered separately as to each fight transmission.

Under the implied contract alleged by defendants, AOL/Time Warner could provide only the cable services to which it had the legal rights. The evidence shows that under the PPVN Affiliation Agreement, AOL/Time Warner could transmit special pay-per-view events to residential customers without obtaining additional permission from plaintiffs. At the time of the 1997 Camacho fight, the account at issue was in Gutierrez's name rather than the Inn's and was classified on AOL/Time Warner's records as residential. Although there is a question about whether, prior to the Camacho fight, AOL/Time Warner should have designated Gutierrez's account as a commercial account, because of the actual classification, AOL/Time Warner had the apparent legal right to sell Gutierrez the fight. Thus, the essence of defendants' allegation regarding the Camacho fight is that AOL/Time Warner represented that it had the authority to transmit the fight for viewing at the Inn, but because Gutierrez's account was misclassified, AOL/Time Warner misrepresented its rights to defendants' detriment. As in *Crawford*, this allegation does nothing more than plead a claim for breach of contract. For that reason, the Court recommends AOL/Time Warner's motion for summary judgment on the ground that defendant's misrepresentation of authority DTPA claim at to the 1997 Camacho fight is merely a restated breach of contract cause of action should be *granted*.

■ With regard to the 1998 Chavez fight, however, it is undisputed that in

---

(Tex.1983) (failure to find satisfactory lender, as promised, was not DTPA violation).

**163.** *Crawford,* 917 S.W.2d at 14.

**164.** *See id.*

**165.** Docket no. 106 at 8.

**166.** Docket no. 108 at 4–5.

October 1997 Gutierrez informed AOL/ Time Warner that the cable installation for his account was located at the Inn and there is evidence he was told by AOL/Time Warner that the cable service for Gutierrez's account would be changed from residential to commercial. Because the cable service was not subsequently relocated from the Inn to a residential location, the essence of defendants' misrepresentation allegation, as to the Chavez fight, is that: AOL/Time Warner knew the cable installation at the Inn was for commercial use and by agreeing to transmit the Chavez fight to the Inn, AOL/Time Warner impliedly represented its authority to sell the fight to a commercial establishment; an untrue representation at the time it was made. This allegation does not restate a breach of contract claim; rather defendants are asserting that AOL/Time Warner, through its actions, falsely implied its authority to provide the fights to a commercial establishment. Whether a false representation can be implied from the facts and whether defendants relied on such a false representation are not issues raised in the motion for summary judgment and are for the jury to determine. Therefore, the Court recommends that AOL/Time Warner's motion for summary judgment regarding defendant's claim that AOL/Time Warner misrepresented its authority to sell defendants the 1998 Chavez fight should be *denied.*

### c. Implied Warranty

Defendants allege that AOL/Time Warner violated § 17.50(a)(2) of the DTPA, which provides consumers a private cause of action for breach of an implied warranty.[167] Specifically, defendants allege that AOL/Time Warner impliedly warranted to Gutierrez that the fights he ordered were "fit to be shown at the location of the cable outlet where it was ordered."[168] Because AOL/Time Warner was not authorized to broadcast the fights to commercial establishments without plaintiffs' approval, defendants argue the fights, as received on Gutierrez's cable system, were not fit for their intended use and thus, AOL/Time Warner breached an implied warranty of fitness.[169]

AOL/Time Warner has moved for summary judgment, arguing that Texas does not recognize the implied warranty defendants claim was breached. Specifically, AOL/Time Warner argues that the transmission of cable television programming is a service and Texas common law does not recognize an implied warranty of fitness for intended use for services.[170] Although the Texas Uniform Commercial Code ("UCC") creates an implied warranty of fitness for a particular purpose in the sale of goods, AOL/Time Warner argues the UCC is not applicable to the sale of services.[171] Defendants argue that by selling to Gutierrez a cable signal which moves through cable wire, AOL/Time Warner has provided "goods" within the meaning of the UCC, and thus, the implied warranties created by §§ 2.312(c), 2.314, and 2.315 are applicable to the transaction between AOL/Time Warner and defendants.[172]

Because the DTPA does not create warranties, any warranty relied on must be

---

167. Docket no. 102 at 11.

168. *Id.*

169. *Id.* at 11–12.

170. Docket no. 104 at 10.

171. *Id.* at 11.

172. Docket no. 106 at 9. The Court notes that in docket no. 102 at page 3, defendants state they have claimed a cause of action for violations of § 2.312(c) of the TEX. BUS. & COM. CODE. At the time docket no. 102 was filed on October 25, 2000, the District Court had denied defendants' motion to amend the pleading to add a cause of action for breach of implied warranties under the UCC. Docket no. 82.

established independently of the Act.[173] Implied warranties are derived from statute and may arise from common law.[174] One statutory source of implied warranties actionable under the DTPA is the UCC.[175] Chapter two of the UCC specifically provides the implied warranties effecting sales transactions,[176] but these warranties are limited to transactions in goods.[177] "Goods" is defined as:

> all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than money in which the price is to be paid, investment securities (Chapter 8) and things in action.[178]

The parties have cited no Fifth Circuit or Texas case addressing the issue of whether cable television programming is a "good" for the purposes of the UCC. Nevertheless, AOL/Time Warner has cited *Kaplan v. Cablevision of PA, Inc.*, a case decided by the Pennsylvania Superior Court.[179] In *Kaplan*, the court held that transmission of cable television programming is a service rather than "goods" as defined by the Pennsylvania Consolidated Statutes Annotated § 2105(a), the Pennsylvania UCC—a definition identical to that found in the Texas UCC.[180] In so holding, the Pennsylvania court found that "the dominant purpose of Subscription Agreement is to provide a cable television programming service." [181] The court concluded that the cable companies did not generate the signals transmitted to the customers; [182] rather they acted "as a

More than a month after filing docket no. 102, defendants, on November 30, 2000, filed a motion to reurge the motion to amend. Docket no. 109. This motion is the one of several pending motions addressed by a companion order, also issued on this date.

173. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1373 (5th Cir.1987); *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex.1984).

174. *Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 52 (Tex.1998); *La Sara Grain Co.*, 673 S.W.2d at 565.

175. *La Sara Grain Co.*, 673 S.W.2d at 565.

176. *See* TEX. BUS. & COM. CODE ANN. §§ 2.101, *et seq.* (Vernon 1994).

177. TEX. BUS. & COM. CODE ANN. §§ 2.102, 2.312, 2.314, and 2.315 (Vernon 1994).

178. TEX. BUS. & COM. CODE ANN. §§ 2.105(a) (Vernon 1994).

179. 448 Pa.Super. 306, 323, 671 A.2d 716, 724 (Pa.Super.Ct.), *appeal denied*, 546 Pa. 645, 683 A.2d 883 (Pa.1996). Also cited are *Satellite Television & Associated Resources,*

*Inc. v. Continental Cablevision of Va., Inc.*, 714 F.2d 351 (4th Cir.1983) (holding that pay television broadcasting was not "goods, wares, merchandise, machinery, supplies, or other commodity" as covered by Clayton Act), *cert. denied*, 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984) and *Mattingly v. Hughes Elect. Corp.*, 107 F.Supp.2d 694, 695 n. 1 (D.Md.2000) (noting that transmission of satellite television programing was not likely "transaction in goods" under Maryland law).

180. *Kaplan*, 448 Pa.Super. at 320, 323, 671 A.2d at 722, 724; *see* TEX. BUS. & COM. CODE ANN. § 2.105(a).

181. *Kaplan*, 448 Pa.Super. at 324, 671 A.2d at 724.

182. The Pennsylvania court compared the transmission of cable television programing to transmissions by electric, gas, and telephone companies. *Id.* at 322, 671 A.2d at 724. The electric and gas companies provide the transmission services as well as the products transmitted, but the telephone companies provide the transmission services for communications; the product generated by an outside source. *Id.* (citing *Whitmer v. Bell Tele. Co. of Pa.*, 361 Pa.Super. 282, 284, 522 A.2d 584 (Pa.Super.1987)) (determining that use of public pay telephone was not transaction in

common carrier transmitting numerous cable signals through cable wires into the subscriber's home."[183]

Just as in *Kaplan*, Texas courts look to the dominant purpose of a transaction in determining whether a good or service is at issue.[184] In the present case, AOL/Time Warner did not generate the transmissions of the fights. and was not authorized to "cut, edit, change, add to, delete from, time delay, or revise" the fights.[185] Instead, plaintiffs transmitted the fights via satellite to AOL/Time Warner's equipment for retransmission to residential customers who ordered the fights from AOL/Time Warner and to commercial customers who ordered the fights directly from plaintiffs. The dominant purpose of the transaction between AOL/Time Warner and Gutierrez was to provide Gutierrez with the service of retransmitting the cable signal of the fights, as generated by plaintiffs. As in *Kaplan*, AOL/Time Warner was acting as a common carrier transmitting the telecast of the fights to subscribing customers. For these reasons, the Court concludes that by retransmitting the fights to Gutierrez, AOL/Time Warner was not selling goods as required by § 2.105(a).[186]

Having concluded that AOL/Time Warner's transmission of the fights was a service and not within the UCC, it must next be determined whether, when services are at issue, Texas common law recognizes an implied warranty of fitness for intended use. The Texas Supreme Court "has recognized implied warranties for services only when the services relate to the repair or modification of existing tangible goods or property."[187] The services at issue are not for repairs or modification of existing tangible goods or property. Therefore, the Court recommends that AOL/Time Warner's motion for summary judgment on the grounds that transmission of the fights was a service rather than a transaction in goods and that Texas common law does not recognize an implied warranty for fitness of intended use of services should be *granted.*

### d. Unconscionable Actions

Defendants have alleged that AOL/Time Warner committed unconscionable acts in violation of the DTPA.[188] AOL/Time Warner has moved for summary judgment arguing that Gutierrez's deposition testimony negates an essential element, namely whether AOL/Time War-

---

goods). The court found the cable companies at issue were akin to the telephone companies because they merely transmitted cable television programming generated from another source into customers' homes. *Id.* at 324, 671 A.2d at 724.

183. *Kaplan*, 448 Pa.Super. at 323, 671 A.2d at 724.

184. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 394 (Tex.1982), *overruled on other grounds by Melody Home Mfg. v. Barnes*, 741 S.W.2d 349 (Tex.1987).

185. Docket no. 106, exhibit M at § 7(sealed).

186. The Court also questions whether under § 2.106(a), a sale of goods has occurred.

Section 2.106(a) provides that a sale "consists in the passing of title from the seller to the buyer for a price." It is not apparent that any title passed to Gutierrez, primarily because under the PPVN Affiliation Agreement, AOL/Time Warner had only "a non-exclusive license to transmit, exhibit, or cablecast" the fights. Docket no. 106, exhibit M at § 2 (sealed).

187. *Rocky Mountain Helicopters*, 987 S.W.2d at 52–53 (refusing to recognize "implied warranty that services incidental to helicopter maintenance will be performed in good and workmanlike manner" because other remedies such as breach of contract and negligence were available).

188. Docket no. 51 at 4–5.

ner took advantage of Gutierrez.[189] The deposition testimony is as follows:

Q. Okay. Did Paragon take advantage of you?

A. Well, they're sure not helping me out of this one, because you know, it's an honest mistake on behalf of their part and they've done nothing about it. Trying to shift it on to me.

Q. Is Paragon taking advantage of you?

A. Well-

Mr. Lee: Well, wait. Objection. You asked the question. He answered the question. It's asked and answered.

Q. What has Paragon ever done to take advantage of you, Mr. Gutierrez?

A. Well, he's not helping this matter. All he had to do was just write a letter.

Q. Anything else?

A. No, sir. That's about it.[190]

As defendants argue the deposition testimony shows that Gutierrez "did not understand that this question was intended to be used in the context for which AOL/Time Warner is using it."[191] Gutierrez appears to believe the questioning refers to AOL/Time Warner's failure to help him after plaintiffs threatened to and did file their lawsuit rather than the cable company's failure to reclassify the account. Because Gutierrez's deposition testimony does not conclusively negate the advantage element of the DTPA claim, the Court recommends that AOL/Time Warner's motion for summary judgment on this ground should be *denied.*

Defendants also argue that the evidence raises a genuine issue of material fact about whether AOL/Time Warner's conduct was unconscionable. In particular, defendants argue that the evidence showing AOL/Time Warner misdesignated Gutierrez's account establishes that AOL/Time Warner "gained the advantage of selling the pay-per-view events and thereby exposed Mr. Gutierrez to this lawsuit by Plaintiffs."[192] In its reply, AOL/Time Warner contends that defendants' arguments are merely restatements of their breach of implied contract claims and that defendants have not presented specific facts raising a genuine issue on unconscionable acts in violation of the DTPA.[193]

Section 17.50(a)(3) provides consumers with a private cause of action for "any unconscionable action or course of action by any person."[194] An "unconscionable action or course of action" is an "act or practice which to a consumer's detriment takes advantage of the lack of knowledge, ability, experience, or capacity of the con-

189. Docket no. 86 at 12.

190. *Id.,* exhibit deposition excerpts at 210–211.

191. Docket no. 102 at 13.

192. *Id.* at 12.

193. Docket no. 104 at 13–14. As with previous claims, even though AOL/Time Warner did not originally move for summary judgment on whether defendants' allegations of unconscionablity are mere restatements of a breach of contract claim or whether defendants presented specific facts raising a material fact issue, in an effort to present a comprehensive report to the District Court, this report addresses the parties' arguments and evidence on this issue. Defendants address these arguments in their supplemental response.

194. Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (Vernon Pamp.2001).

sumer to a grossly unfair degree." [195] Under Texas law, intent is not an element of § 17.50(a)(3).[196] Unconscionability is determined by an objective standard.[197] The term "gross" should be given its ordinary meaning and, therefore, the resulting unfairness must be "glaringly noticeable, flagrant, complete, and unmitigated." [198]

The essence of defendants' allegation is that AOL/Time Warner had an obligation to properly designate Gutierrez's account as commercial and failed to fulfill that duty, thereby unconscionably subjecting defendants to legal liability. This is nothing more than an allegation that by breaching the alleged implied contract, AOL/Time Warner subjected defendants to actual damages in the form of plaintiffs' lawsuit. A simple breach of contract does not become a violation of the DTPA by alleging the act of breaching was unconscionable.[199] Even if the Court agreed that AOL/Time Warner's misclassification unfairly impacted defendants, there is no objective evidence suggesting that AOL/Time Warner's misclassification was more than a mistake or poor business practice or that AOL/Time Warner was taking advantage of Gutierrez when they classified his account as residential rather that commercial. There is no evidence raising a genuine issue of material fact that AOL/Time Warner's business mistakes took advan-

tage of Gutierrez to a grossly unfair degree. For these reasons the Court recommends that AOL/Time Warner's motion for summary judgment as to defendants' claim that AOL/Time Warner's unconscionable acts violated the DTPA should be *granted.*

## VII. *MISCELLANEOUS MATTERS*

As noted above, when Prostar initially filed its original complaint in Cause No. SA–99–CA–987, it named as defendants Alfredo O. Esquivel, individually and d/b/a The New Mug Club ("Esquivel") and Joe Basquez, individually and d/b/a Pecan Grove.[200] On December 16, 1999, Prostar filed a first amended complaint which continued to name Esquivel but omitted Joe Basquez, individually, as a party.[201] Instead, Prostar named Conception Sierra Vasquez, individually and d/b/a Pecan Grove ("Vasquez").[202] Therefore, so that the record be clear, the Court recommends that Joe Basquez, individually, should be *dismissed* from the case.

Upon reviewing the record, it appears that Esquivel has been served with notice of Prostar's original complaint [203] and with a copy of the first amended complaint.[204] Nevertheless, Esquivel has not filed an answer or appeared in the case. Prostar's original complaint was filed August 17,

---

**195.** TEX. BUS. & COM. CODE ANN. § 17.45(5) (Vernon Pamp.2001).

**196.** *Global Petrotech, Inc. v. Engelhard Corp.,* 58 F.3d 198, 201 (5th Cir.1995).

**197.** *Dwight's Discount Vacuum Cleaner City, Inc. v. Scott Fetzer Co.,* 860 F.2d 646, 650 (5th Cir.) (citing *Chastain v. Koonce,* 700 S.W.2d 579, 583 (Tex.1985)), *cert. denied,* 490 U.S. 1108, 109 S.Ct. 3161, 104 L.Ed.2d 1024 (1989).

**198.** *Id.; Latham v. Castillo,* 972 S.W.2d 66, 68 (Tex.1998) (quoting *Chastain,* 700 S.W.2d at 584).

**199.** *Gulf States Underwriters of La., Inc. v. Wilson,* 753 S.W.2d 422, 430 (Tex.App.-Beaumont 1988, writ denied).

**200.** Docket no. 1, SA–99–CA–987.

**201.** Docket no. 16, SA–99–CA–987.

**202.** *Id.*

**203.** Docket no. 2, SA–99–CA–987.

**204.** Docket no. 16, SA–99–CA–987, at certificate of service.

1999 and the complaint was amended on December 16, 1999. Because more than one year has passed since Prostar has pursued any prosecution of Esquivel, the Court recommends that Prostar's first amended complaint [205] against Alfredo O. Esquivel, individually and d/b/a the New Mug Club should be *dismissed* without prejudice for failure to prosecute.[206]

Vasquez was first named in Prostar's first amended complaint,[207] filed on December 16, 1999. There is nothing in the record indicating that Vasquez was served with notice of process within 120 days after the complaint was filed. Rule 4(m) provides that if service is not completed within 120 days after the complaint is filed, the court, on its own motion and after notice to the plaintiff, "shall dismiss the action without prejudice as to that defendant." [208] Because more than 120 days have elapsed since December 16, 1999, the Court recommends that Prostar's first amended complaint [209] against Conception Sierra Vasquez, individually and d/b/a Pecan Grove should be *dismissed* without prejudice, for failure to prosecute.

It should be noted that on April 4, 2000, the District Court stayed any further discovery between plaintiffs and defendants until responsibility for payment as between AOL/Time Warner and defendants has been established.[210] On September 25, 2000, the District Court denied [211] defendants' motion to resume discovery.[212] When the District Court enters an Order on this report, it may be appropriate for the District Court to address whether and to what extent the stay on discovery should be lifted. Otherwise, until the District Court enters an Order on this report, the undersigned considers it to be inappropriate to enter any order on discovery.

It should also be noted that on the same date as the issuance of this report, an Order has been entered on the procedural motions pending at the time of the referral. These motions raise matters that do not need to be addressed through the report mechanism, but, because the matters may affect the District Court's evaluation of the procedural posture of the case [relevant to an assessment both of the cross-motions for summary judgment addressed in the report and the pending objection/appeal from an earlier procedural order], the report makes reference to the Order here. In addition, the Order establishes a deadline for the filing of a final pretrial order. Although it would be expected that the District Court will not set this matter for trial until after ruling on this report—and such a setting would be premised on the District Court's agreement that there are factual issues to be tried—the undersigned considered it appropriate at this interval to provide the deadlines for the final matters to be addressed in the event the report is accepted. The parties may ask the undersigned to select new deadlines, if appropriate, depending on the timing of the District Court's review of this report.

Finally, it is noted that defendants filed demands for jury trial on December 9, 1999,[213] in each case filed by plaintiffs (pri-

205. *Id.*

206. FED. R. CIV P. 41(b).

207. Docket no. 16, SA–99–CA–987.

208. FED. R. CIV P. 4(m).

209. Docket no. 16, SA–99–CA–987.

210. Docket no. 53.

211. Docket no. 91.

212. Docket no. 84.

213. Docket no. 15 in SA–99–CA–880; docket no. 12 in SA–99–CA–881; docket no. 13 in SA–99–CA–987.

or to the time of consolidation). These demands were filed almost two months following defendants' answers to plaintiffs' original complaints.[214] The demands would appear to relate to plaintiffs' claims against defendants. No party has challenged these demands based on an argument that there is no right to trial by jury on claims brought under 47 U.S.C. §§ 553 and 605. The District Court has the inherent authority to raise, *sua sponte*, the issue of whether there is a central right to trial by jury of any claim.[215] If appropriate, as this case may progress, the District Court may wish to seek input from the parties as to matters relating to whether this case will be tried to a jury or to the Court.[216]

## VIII. *CONCLUSION*

The Court recommends that defendants, Gutierrez and the Inn's, motion for summary judgment[217] as to claims alleged by plaintiffs, Top Rank, Prostar, and J & J, should be **DENIED.**

In addition, the Court recommends that AOL/Time Warner's motion for summary judgment be **GRANTED** in part and **DENIED** in part as follows:[218]

summary judgment as to defendants breach of implied contract claims[219] should be **DENIED;**

summary judgment as to defendants' breach of third party beneficiary contract should be **GRANTED** and defendants' third party beneficiary claim should be **DISMISSED;**

summary judgment as to defendants' claim that AOL/Time Warner made misrepresentations[220] in October 1997 in violation of the DTPA should be **GRANTED** and the claims should be **DISMISSED;**

summary judgment as to defendants' claim that AOL/Time Warner falsely misrepresented its authority to provide the Chavez fight to defendants in 1998 should be **DENIED;**

summary judgment as to defendants' DTPA claim for breach of implied warranty should be **GRANTED** and defendants' breach of implied warranty claims should be **DISMISSED;**

summary judgment as to defendants' claim that AOL/Time Warner committed unconscionable acts in violation of the DTPA should be **GRANTED** and those claims should be **DISMISSED;**

and any other relief expressly requested not herein recommended to be **GRANTED** should be **DENIED.**

Additionally, although Prostar named Joe Basquez, individually, in the original complaint,[221] because Prostar did not name Joe Basquez, individually, in its first

---

**214.** Docket no. 2 in SA–99–CA–880; docket no. 2 in SA–99–CA–881; docket no. 4 in SA–99–CA–987.

**215.** Fed. R. Civ. P. 39.

**216.** Such issues may include: what was defendants' basis for demanding a jury trial on December 9, 1999? is there a right to jury trial on claims brought under 47 U.S.C. §§ 553 and 605? and may a party rely on an earlier filed but incorrect jury demand in asking for a jury trial?

**217.** Docket no. 87.

**218.** Docket nos. 86

**219.** Specifically, there is a genuine issue of material fact as to whether an implied contract obligated AOL/Time Warner to properly designate Gutierrez's account as commercial.

**220.** The misrepresentations include statements that Gutierrez's account would be reclassified and that AOL/Time Warner had the authority to provide the 1997 Camacho fight to Gutierrez for viewing at the Inn.

**221.** Docket no. 1, SA–99–CA–987.

amended complaint,[222] it is recommended that Basquez should be **DISMISSED** from the case.

Also, the Court recommends that Alfredo O. Esquivel, individually and d/b/a The New Mug Club and Conception Sierra Vasquez, individually and d/b/a Pecan Grove, named in Prostar's the first amended complaint,[223] should be **DISMISSED** without prejudice, for Prostar's failure to prosecute.

## IX. *INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL*

The United States District Clerk shall serve a copy of this Report and Recommendation on each and every party either (1) by certified mail, return receipt requested, or (2) by facsimile if authorization to do so is on file with the Clerk. According to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this report must serve and file written objections to the Report and Recommendation within 10 days after being served with a copy unless this time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the District Court.[224] Additionally, any failure to file written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation within 10 days after being served with a copy shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[225]

March 2, 2001.

---

**222.** Docket no. 16, SA–99–CA–987.

**223.** *Id.*

**224.** *See Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985).

**225.** *Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1428 (1996).